No. 23-1769

---

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

---

CHRISTIAN HEALTHCARE CENTERS, INC.,

*Plaintiff-Appellant,*

v.

DANA NESSEL; JOHN E. JOHNSON, JR.; PORTIA L. ROBERSON; ZENNA FARAJ ELHASON; GLORIA E. LARA; REGINA GASCO-BENTLEY; ANUPAMA KOSARAJU; RICHARD CORRIVEAU; DAVID WORTHAMS, in their official capacities as members of the Michigan Civil Rights Commission,

*Defendants-Appellees.*

---

On Appeal from the United States District Court
for the Western District of Michigan
Case No. 1:22-cv-00787

---

## APPELLANT'S SECOND MOTION FOR LEAVE TO
## SUPPLEMENT THE APPELLATE RECORD OR TAKE
## JUDICIAL NOTICE

---

John J. Bursch
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(616) 450-4235
jbursch@ADFlegal.org

Jonathan A. Scruggs
Bryan D. Neihart
Henry W. Frampton, IV
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
jscruggs@ADFlegal.org
bneihart@ADFlegal.org
hframpton@ADFlegal.org

*Counsel for Appellant*

Christian Healthcare Centers, Inc. (Christian Healthcare or the ministry) moves the Court to supplement the appellate record with or take judicial notice of additional evidence that supports its standing and ripe claims. Appellees (Michigan) do not consent to this motion.

Christian Healthcare is a ministry in Michigan that fulfills the biblical mandate to serve others by offering medical and wellness services to the public. Opening Br. 6–7, ECF No. 18. The ministry challenged the Elliott-Larsen Civil Rights Act (ELCRA) and Michigan's public-accommodations law because Michigan interprets these laws to compel it to hire employees who don't share its faith and use pronouns and prescribe cross-sex hormones that violate its beliefs. *Id.* at 8–22. (To be clear, the ministry does not turn away any client because of who they are. But the ministry is unable to say certain things and perform specific procedures that violate its faith.) Referring to evidence beyond the complaint, Michigan raised a Rule 12(b)(1) factual attack on jurisdiction and argued that the ministry lacked standing and ripe claims. *E.g.*, Defs.' Mot. Dismiss, R.20, PageID#562–76; Pl.'s Opp. to Mot. Dismiss, R.22, PageID#610.

The district court agreed and dismissed the case. Relying on *McKay v. Federspiel*, the district court held that Michigan had no enforcement "'history,'" that the laws did not contain "'an attribute … that makes enforcement easier or more likely'" such as a public-enforcement provision, that disavowal would be "impossible," and that

2

Christian Healthcare's claims were not ripe. Order, R.28, PageID#866, 873–76 (quoting 823 F.3d 862, 869 (6th Cir. 2016)).

The proffered evidence consists of gender-identity discrimination complaints filed against a hair salon, Michigan's discrimination charge against the hair salon, and Michigan's related public statements.

In July and September 2023, several people filed complaints with Michigan alleging that Studio 8 Hair Lab, LLC subjected them "to discriminatory advertising" based on sex and gender identity. Gajdzis Decl. in Supp. of Mot. to Suppl. (Gajdzis Decl.), Ex. A. The complaints were based on Studio 8's social media posts.

In November 2023, Michigan issued a discrimination charge against Studio 8. Gajdzis Decl. Ex. C. Reviewing the text of Studio 8's social media posts, Michigan concluded that the salon violated ELCRA's Publication Clause (MCL 37.2302(b)) by causing the complainants to lose the "full and equal enjoyment of a public accommodation." *Id.* Michigan sought "monetary compensation … for emotional distress," attorney fees, a report to the licensing board, and other penalties. *Id.*

 Michigan then published a press release and held a press conference praising the charge. Gajdzis Decl. Ex. B. Michigan confirmed that the charge was based solely on the social media posts, *not* on an actual denial of service. *See* Mich. Dep't of C.R., *MDCR Files Formal Charge of Discrimination Against Studio 8 Hair Lab LLC*, YouTube at 11:55–12:11 (Nov. 15, 2023), https://perma.cc/FFV5-KCRVx ("We have

individuals … who viewed and were impacted by an advertisement that was posted by the public accommodation."); *id.* at 28:28–38 ("So again, I want to be clear that we are very specific as to the violation here has been the unlawful advertisement and *not* the denial of services.") (emphasis added).

For example, one reporter asked, "How exactly were [the complainants] impacted?" *Id.* at 12:38–40. Marcelina Trevino, the Michigan Department of Civil Rights Director of Enforcement, responded, "Just by posting, having an advertisement posting, would allow jurisdiction for someone to file because it impacts them on being able to receive services from a public accommodation. So it's really centered on the advertisement and the impact that that may have on individuals." *Id.* at 12:48–13:06.

Another reporter said, "I just wanted to clarify.… [D]id you find any proof that this Studio 8 Hair Salon turned away anyone like physically or is it just the advertisement?" *Id.* at 14:50–15:08. Trevino repeated, "This is a case that is based on the advertisement publishing of an unlawful discrimination comments of a refusal to issue services." *Id.* at 15:25–37. The reporter countered, "Have you found any proof that this hair salon turned people away directly?" *Id.* at 16:00–04. Trevino reiterated, "We have not received a complaint nor investigated whether the hair salon has specifically denied services, which is why that is not part of the charge in this matter." *Id.* at 16:05–15.

Trevino also confirmed that Michigan has investigated "unlawful discriminative, advertisements in the past." *Id.* at 15:49–53.

This evidence bolsters the ministry's standing because it shows that Michigan actively enforces its laws, facilitates public enforcement of ELCRA, and refuses to disavow here despite more than enough facts to do so. The evidence also shows that Christian Healthcare's claims are ripe. And because Michigan raised a Rule 12(b)(1) factual attack on jurisdiction, it is appropriate to evaluate evidence. When deciding factual attacks on jurisdiction, "a court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). This Court should consider this evidence under (I) its inherent equitable authority or (II) its ability to judicially notice records.

## I.    The Studio 8 records should be incorporated into the record because they confirm that Christian Healthcare has standing and presents ripe claims.

Appellate courts have inherent equitable authority to supplement the record on appeal, and they regularly exercise that authority when supplemental facts shed light on their jurisdiction. Mot. to Suppl. 3–4, ECF No. 19–1; *accord* 16A Charles Alan Wright et al., *Federal Practice and Procedure* § 3956.4 (2023 update) ("Supplementation may be particularly likely to occur if the item to be added … goes to the court's subject-matter jurisdiction."). This Court evaluates several factors to

decide whether to exercise that authority. Those factors include (1) the date the proponent discovered the evidence; (2) "whether proper resolution of the case [is] beyond any dispute"; (3) justice and efficiency; (4) whether the case involves a habeas corpus claim; and (5) whether the opposing party knows about the evidence. *United States v. Murdock*, 398 F.3d 491, 500 (6th Cir. 2005); *see also* Mot. to Suppl. 3–4.

The Studio 8 documents meet all of these factors, besides the habeas corpus factor. The documents were discovered recently. *See* Gajdzis Decl. ¶¶ 3–7. It is efficient to consider the documents now because Michigan cannot offer a "reason to believe that anything in the[m]"—including Michigan's own statements and analysis—"is untrue." *Thomas More L. Ctr. v. Obama*, 651 F.3d 529, 536 (6th Cir. 2011), *abrogated on other grounds by Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012). And Michigan knows about the evidence.

That leaves whether the Studio 8 documents resolve Christian Healthcare's standing and ripeness "beyond any dispute." *Murdock*, 398 F.3d at 500. They do. The ministry has standing and presents ripe claims. Opening Br. 25–52. The Studio 8 records confirm that.

For example, contrary to the district court's assumption, the records show that Michigan actively investigates and prosecutes allegations of gender-identity discrimination, entitling Christian Healthcare to a presumption that it faces a credible enforcement threat.

*Id.* at 31–35. That enforcement actively also satisfies one of the *McKay* factors. *Id.* at 35–38.

Next, contrary to the district court's holding, the records prove that Michigan's laws are easy to enforce. The ELCRA deputizes the public to initiate enforcement actions. *Id.* at 40–41. That satisfies another *McKay* factor. *Id.* What's more, Michigan allows members of the public to file complaints based on mere statements posted by public accommodations. YouTube at 12:48–13:06. So anyone could file a complaint against Christian Healthcare for posting its Membership Agreement or employment application online. Opening Br. 18–19, 29–30. Contrary to the district court's analysis, the objectively reasonable fear of such a complaint naturally caused the ministry to censor its speech and limit other activities to avoid possible prosecution. *Id.*

The records also dispel Michigan's argument and the district court's conclusion that disavowal is "impossible" here. Order, R.28, PageID#876. The discrimination charge relies on four social media posts published by Studio 8. *See* Gajdzis Decl. Ex. C ¶¶ 31–32. Meanwhile, Christian Healthcare provided a verified complaint, declarations, the exact statements it wants to post, its policies, and other information. Opening Br. 41–43. If four short posts are sufficient for Michigan to proceed with a prosecution—and demand damages, attorney fees, and a report to a licensing agency—then Christian Healthcare has provided Michigan with more than enough information to disavow enforcement.

The fact that Michigan hasn't yet disavowed shows that it is unwilling to do so, which again confirms Christian Healthcare's standing.

For similar reasons, the Studio 8 documents demonstrate that Christian Healthcare's claims are ripe because the record contains the relevant information to resolve the ministry's request for a preliminary injunction. Opening Br. 41–43.

## II. The Studio 8 records are also judicially noticeable.

Alternatively, this Court could judicially notice the Studio 8 records and Michigan's related statements. Judicial notice may be taken "at any stage of the proceeding," including "on appeal." Fed. R. Evid. 201(d) and advisory committee's note to subdivision (f). The documents and statements "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned" on this topic—i.e., from Michigan itself. Fed. R. Evid. 201(b). In fact, the documents and statements are doubly judicially noticeable.

They are court records and public records because they are documents filed with and adjudicated by Michigan's Department of Civil Rights and Civil Rights Commission. *See Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999) ("Courts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies."), *abrogated on other grounds by Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002); *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980)

("Federal courts may take judicial notice of proceedings in other courts of record." (cleaned up)). And the documents and statements are posted on Michigan's official website or are linked through Michigan's website. *See* Gajdzis Decl. ¶¶ 4–7; *Broom v. Shoop*, 963 F.3d 500, 509 (6th Cir. 2020) ("This court and numerous others routinely take judicial notice of information contained on state and federal government websites." (cleaned up)). Michigan cannot reasonably question these documents or its officials statements. So the documents should be judicially noticed.

## CONCLUSION

In sum, either the factors weigh decisively in favor of supplementing the record on appeal with this evidence, or the evidence is judicially noticeable. Of course, Christian Healthcare has standing even without these documents. Opening Br. 25–52. But this evidence bolsters that conclusion and should be considered here.

Dated: December 1, 2023

Respectfully submitted,

*s/John J. Bursch*
John J. Bursch
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(616) 450-4235
jbursch@ADFlegal.org

Jonathan A. Scruggs
Bryan D. Neihart
Henry W. Frampton, IV
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
jscruggs@ADFlegal.org
bneihart@ADFlegal.org
hframpton@ADFlegal.org

*Counsel for Appellants*

## CERTIFICATE OF COMPLIANCE

This motion complies with the word limit of Fed. R. App. P. 27(d)(2)(A) because it contains 1,773 words, excluding parts of the motion exempted by Fed. R. App. P. 32(f) and 6 Cir. R. 32(b).

This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in Word 365 using a proportionally spaced typeface, 14-point Century Schoolbook.

Dated: December 1, 2023

*s/John J. Bursch*
John J. Bursch
*Counsel for Appellants*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 1, 2023, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

*s/John J. Bursch*
John J. Bursch
*Counsel for Appellant*