No. 23-1769

In the
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

CHRISTIAN HEALTHCARE CENTERS, INC.,

     Plaintiff-Appellant,

v.

DANA NESSEL, JOHN E. JOHNSON, JR., PORTIA L. ROBERSON, ZENNA FARAJ ELHASON, GLORIA E. LARA, REGINA GASCO-BENTLEY, ANUPAMA KOSARAJU, RICHARD CORRIVEAU, DAVID WORTHAMS, in their official capacities as members of the Michigan Civil Rights Commission,

     Defendants-Appellees.

Appeal from the United States District Court
Western District of Michigan, Southern Division
Honorable Jane M. Beckering

**BRIEF FOR DEFENDANTS-APPELLEES**

Kimberly K. Pendrick (P60348)
Heather S. Meingast (P55439)
Tonya C. Jeter (P55352)
Assistant Attorneys General
Attorneys for Defendants-Appellees
Civil Rights & Elections Division
3030 W. Grand Blvd, 10th Floor
Detroit, Michigan 48202
313.456.0067

Dated: December 8, 2023

# TABLE OF CONTENTS

Page

Table of Contents......................................................................... i

Table of Authorities.................................................................... iv

Statement in Support of Oral Argument................................... x

Jurisdictional Statement.............................................................. 1

Statement of Issues Presented.................................................... 2

Introduction................................................................................. 3

Counter-Statement of the Case................................................... 5

    A.    A brief chronology of the progression of LGBTQ rights in Michigan. ........................................................... 5

    The Commission's Interpretive Statement ......................... 5

    *Rouch World, LLC, et al v. Dep't of Civil Rights (MDCR)*............... 7

    Amendment of the ELCRA to include sexual orientation and gender identity and expression as protected categories ....... 9

    B.    Procedural history ...................................................... 10

    Christian Healthcare's claims ........................................... 10

    The District Court dismisses Christian Healthcare's lawsuit and denies its motion for reconsideration.............................. 11

Standard of Review...................................................................... 14

Argument...................................................................................... 15

I.    The District Court correctly held that Christian Healthcare's complaint failed to demonstrate standing sufficient to invoke federal-court jurisdiction.................................................. 15

    A.    Standing requires a concrete, actual or imminent harm, not a generalized grievance against government conduct or a mere subjective allegation of chill. .................. 15

    B.    Christian Healthcare failed to sufficiently allege an injury traceable to Defendants to support pre-enforcement review. ............................................................. 17

        1.    Christian Healthcare's intended conduct is not arguably proscribed by the ELCRA or the EAA.......... 19

        2.    Christian Healthcare failed to sufficiently allege a credible threat of enforcement under the ELCRA or the EAA........................................................ 25

II.   Christian Healthcare's claims are not ripe for review because it has not demonstrated a credible threat of enforcement of the ELCRA or the EAA.................................................... 38

    A.    For a claim to be ripe, the factual record must be sufficiently developed and a credible threat of harm must exist, and the denial of review must create a hardship.................................................................. 39

        1.    Christian Healthcare failed to sufficiently allege a credible threat of enforcement under the ELCRA or the EAA........................................................ 41

        2.    Christian Healthcare's claims do not arise out of sufficiently concrete facts to support judicial review............................................................. 44

        3.    Christian Healthcare has not shown sufficient hardship absent judicial review. ................................... 46

III.  The District Court properly declined to address Christian Healthcare's motion for preliminary injunctive relief where the court determined it lacked subject-matter jurisdiction........... 48

    A.  Christian Healthcare's request that this Court grant an injunction should be rejected and the matter remanded to the District Court for full consideration of the injunction factors. ............................................... 49

    B.  If this Court considers Christian Healthcare's request for an injunction on appeal, it should deny injunctive relief where Christian Healthcare cannot satisfy all four factors. ............................................................. 54

        1.  Christian Healthcare has not demonstrated it will suffer irreparable harm absent issuance of an injunction......................................................... 55

        2.  Issuance of a preliminary injunction would harm the citizens and would be contrary to the public interest. ........................................................... 58

Conclusion and Relief Requested.............................................. 60

Certificate of Compliance.......................................................... 61

Certificate of Service ................................................................ 62

Designation of Relevant District Court Documents ................................ 63

# TABLE OF AUTHORITIES

Page

## Cases

*Abbott Lab'ys v. Gardner*, 387 U.S. 136 (1967) ....................................... 40

*Abney v. Amgen, Inc.*, 443 F.3d 540 (6th Cir. 2006) ................................ 56

*Adult Video Ass'n v. U.S. Dep't of Just.*, 71 F.3d 563 (6th Cir. 1995) ................................................................................................ 17

*AES-Apex Emp. Servs., Inc. v. Rotondo*, 924 F.3d 857 (6th Cir. 2019) ................................................................................................ 14

*Assemany v. Archdiocese of Detroit*, 434 N.W.2d 233 (Mich. Ct. App. 1988) .......................................................................................... 23, 24

*Bailey v. Callaghan*, 715 F.3d 956 (6th Cir. 2013) .................................. 55

*Balow v. Michigan State University*, 24 F.4th 1051 (6th Cir. 2022) ...... 53

*Bigelow v. Virginia,* 421 U.S. 809 (1975) ................................................ 16

*Block v. Canepa*, 74 F.4th 400 (6th Cir. 2023) ........................................ 30

*Bonnell v. Lorenzo*, 241 F.3d 800 (6th Cir. 2001) ................................... 51

*Bush v. Rauch*, 38 F.3d 842 (6th Cir. 1994) ............................................ 15

*Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520 (6th Cir. 2020) ........ 50

*Champion v. Secretary of State*, 761 N.W.2d 747 (Mich. App. 2008) ..... 21

*Clapper v. Amnesty Int'l.*, 568 U.S. 398 (2013) .................................. 18, 29

*Coal. to Def. Affirmative Action v. Granholm*, 473 F.3d 237 (6th Cir. 2006) .......................................................................................... 59

*Congregation Lubavitch v. City of Cincinnati*, 923 F.2d 458 (6th Cir. 1991) .......................................................................................... 59

*D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324 (6th Cir. 2019)........................ 49

*Daunt v. Benson,* 956 F.3d 396 (6th Cir. 2020) ........................................ 16

*Davis v. Colerain Twp., Ohio*, 51 F.4th 164 (6th Cir. 2022) ................... 34

*Doe v. University of Michigan*, 78 F.4th 929 (6th Cir. 2023) ............29, 43

*EEOC v. R.G. & G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560 (6th Cir. 2015)........................................................................................ 6

*Employment Div., Dept. of Human Resources of Ore. v. Smith*, 494 U.S. 872 (1990)..............................................................................22, 25

*Fisher v. Thomas*, 52 F.4th 303 (6th Cir. 2022) ...................................... 27

*Foresight Coal Sales, LLC. v. Chandler,* 60 F.4th 288 (6th Cir. 2023)................................................................................................. 52

*Glenn v. Holder*, 690 F.3d 417 (6th Cir. 2012) ........................................ 14

*Graveline v. Benson*, 992 F.3d 524 (6th Cir. 2021)...............16, 19, 25, 28

*Green Party of Tenn v. Hargett*, 791 F.3d 684 (6th Cir. 2015)............... 34

*Hormel v. Helvering*, 312 U.S. 552 (1941)........................................50, 51

*Hunter v. Hamilton Cty. Bd. of Elections*, 635 F.3d 219 (6th Cir. 2011)................................................................................................... 55

*Int'l Outdoor, Inc. v. City of Troy, Michigan,* 77 F.4th 432 (6th Cir. 2023)................................................................................................... 14

*Jomaa v. United States*, 940 F.3d 291 (6th Cir. 2019) ............................ 15

*Kentucky v. U.S. ex rel. Hagel*, 759 F.3d 588 (6th Cir. 2014).................53

*Kentucky v. Yellen*, 54 F.4th 325 (6th Cir. 2022).................................... 18

*Kiser v. Reitz,* 765 F.3d 601 (6th Cir. 2014)............................................ 18

*Ky. Press Ass'n, Inc. v. Ky.*, 454 F.3d 505 (6th Cir. 2006)....................... 39

*Laird v. Tatum*, 408 U.S. 1 (1972) ..................................................16, 17

*Lovely v. United States*, 570 F.3d 778 (6th Cir. 2009) ............................ 14

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992)........................................ 15

*Marchi v. Bd. of Coop. Educ. Servs. of Albany*, 173 F.3d 469 (2d Cir. 1999).................................................................. 40, 41, 44

*Maryland v. King*, 567 U.S. 1301 (2012).................................................. 58

*McCormick v. Miami Univ.*, 693 F.3d 654 (6th Cir. 2012)...................... 14

*McLeod v. Providence Christian School*, 408 N.W.2d 141 (Mich. Ct. App. 1987)............................................................................ 23

*McNeilly v. Land*, 684 F.3d 611 (6th Cir. 2012)...................................... 54

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007)...................... 39

*Michigan Dept. of Civil Rights ex rel. Forton v. Waterford Tp. Dept. of Parks & Recreation*, 387 N.W.2d 821 (Mich. 1986)............... 20

*Miles Christi Religious Order v. Twp. of Northville*, 629 F.3d 533 (6th Cir. 2010)............................................................................ 41

*Miller v. City of Wickliffe, Ohio*, 852 F.3d 497 (6th Cir. 2017) .............. 39

*Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272 (6th Cir. 1997).....25, 39

*New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345 (1977) ............................................................................ 58

*Nken v. Holder*, 556 U.S. 418 (2009).......................................................... 58

*Norton v. Ashcroft*, 298 F.3d 547 (6th Cir. 2002) ................................... 40

*Our Lady of Guadalupe School v. Morrissey-Berry*, 140 S. Ct. 2049 (2020) ............................................................................ 24

*Parsons v. United States Dep't of Justice,* 801 F.3d 701 (6th Cir. 2015)..............................................................................17, 18

*Penthouse International, Ltd. v. Meese*, 939 F.2d 1011 (D.C. Cir. 1991) ................................................................................ 37

*Platt v. Bd. of Comm'rs on Grievs. & Discipline of the Ohio Supreme Court*, 769 F.3d 447 (6th Cir. 2014) ...................................... 54

*Plunderbund Media, L.L.C. v. DeWine*, 753 F. App'x 362 (6th Cir. 2018) ............................................................................... 27

*Porth v. Roman Catholic Diocese*, 532 N.W.2d 195 (Mich. Ct. App. 1995) ............................................................................... 23

*Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343 (6th Cir. 2007) ............................................................................... 14

*Priorities USA v. Nessel*, 860 Fed. Appx. 419 (6th Cir. 2021) ........... 58, 59

*Rouch World, LLC, et al v. Dep't of Civil Rights*, 987 N.W.2d 501 (Mich. 2022) .................................................................... *passim*

*S. Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844 (6th Cir. 2017) .................................................... 54

*Speech First, Inc. v. Schlissel*, 939 F.3d 756 (6th Cir. 2019) .................. 31

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) .............................. 15

*Susan B. Anthony List v. Driehaus,* 573 U.S. 149 (2014) ................. 18, 36

*Texas v. United States*, 523 U.S. 296 (1998) ........................................... 40

*Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568 (1985) ......... 40

*Thompson v. Dewine*, 959 F.3d 804 (6th Cir. 2020) ................................ 59

*Town of Chester, N.Y. v. Laroe Estates, Inc.*, ___ U.S. ___, 137 S. Ct. 1645; 198 L.Ed.2d 64 (2017) ............................................ 15

*United Presbyterian Church in the U.S.A. v. Reagan*, 738 F.2d 1375 (D.C. Cir., 1984) .................................................... 16, 17

*United States v. Hays*, 515 U.S. 737 (1995) ............................................ 16

*United States v. Miami Univ.*, 294 F.3d 797 (6th Cir. 2002) .................56

*Univ. of Tex. v. Camenisch*, 451 U.S. 390 (1981) ......................................56

*Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th
    1021 (6th Cir. 2022) ...............................................................................35

*Warshak v. United States*, 532 F.3d 521 (6th Cir. 2008) .........................40

*Weishuhn v. Catholic Diocese*, 756 N.W.2d 483 (Mich. Ct. App.
    2008) .......................................................................................................23

*White v. United States*, 601 F.3d 545 (6th Cir. 2010) ..............................14

*Whole Woman's Health v. Jackson*, ___ U.S. ___, 142 S. Ct. 522
    (2021) .....................................................................................................27

*Winter v. Wolnitzek*, 834 F.3d 681 (6th Cir. 2016) ..................................40

*Younger v. Harris*, 402 U.S. 37 (1971) ...............................................27, 41

## Statutes

Mich. Comp. Laws § 37.2102 ......................................................................22

Mich. Comp. Laws § 37.2102(1) ...................................................................5

Mich. Comp. Laws § 37.2201(a) .................................................................20

Mich. Comp. Laws § 37.2208 ................................................................21, 35

Mich. Comp. Laws § 37.2301(a) .................................................................20

Mich. Comp. Laws § 37.2302(a) .............................................................8, 32

Mich. Comp. Laws § 37.2601 ..................................................................6, 26

Mich. Comp. Laws § 37.2602 ..................................................................7, 42

Mich. Comp. Laws § 37.2705(1) .............................................................45, 59

Mich. Comp. Laws § 750.146 .................................................................22, 35

Mich. Comp. Laws § 750.147 ....................................................................... 43

Mich. Comp. Laws §37.2302 ........................................................................ 20

Mich. Comp. Laws §37.2705 ........................................................................ 20

Mich. Comp. Laws §37.2705(1) .................................................................... 20

Mich. Comp. Laws §750.146 ........................................................................ 22

Mich. Comp. Laws 37.2103(i) ........................................................................ 5

## Other Authorities

28 U.S.C. § 1291 ......................................................................................... 1

Mich. Admin. Code, R. 37.20 ....................................................................... 21

## Rules

Mich. Admin. Rules, R. 37.20 ...................................................................... 48

## Constitutional Provisions

Mich. Const. 1963, Art. 1, § 2 ................................................................. 6, 22

Mich. Const. 1963, Art. 5, § 29 ............................................................ 6, 22, 59

**STATEMENT IN SUPPORT OF ORAL ARGUMENT**

Appellant has requested oral argument.  Defendants-Appellees believe that oral argument is unnecessary for the Court to decide the issues presented in this appeal of the District Court's well-reasoned opinions and that the issues raised in this appeal are resolved by established law.  However, if the Court grants oral argument, Defendants-Appellees request the opportunity to present argument.

## JURISDICTIONAL STATEMENT

Appellees agree that this Court generally has jurisdiction over appeals from final decisions of district courts under 28 U.S.C. § 1291. The District Court dismissed this matter on March 29, 2023. (Opinion and Order, R. 28, Page ID # 877; Judgment, R. 29, Page ID # 878.) On August 22, 2023, the District Court denied Christian Healthcare's motion for reconsideration of its order dismissing the case. Christian Healthcare timely filed a notice of appeal, giving this Court appellate jurisdiction under 28 U.S.C. § 1291. (Opinion and Order, R. 45, Page ID ## 1193–1205.)

## STATEMENT OF ISSUES PRESENTED

1.  To establish standing, a party must show injury in fact, not just a generalized grievance against governmental conduct and, for a First Amendment claim, a party must still show an injury that is actual and imminent, not just a subjective allegation of chilled speech. But Christian Healthcare relied on mere speculation that in the future it may be investigated or prosecuted for practicing its religious beliefs under the Elliott-Larsen Civil Rights Act and Michigan's public accommodations law.  Should the District Court's dismissal of Christian Healthcare's complaint be affirmed?

2.  The ripeness doctrine is designed to ensure that the jurisdiction of the federal courts is limited to actual cases and controversies, not premature, abstract disagreements that may not occur, and while ripeness is somewhat relaxed in the First Amendment context, there nevertheless must be a credible fear that the anticipated action will occur.  The record below established that none of the State Defendants have *ever* interfered with Christian Healthcare's business, medical practice, employment decisions, let alone threatened to investigate or prosecute it, because of its religious mission.  Should the District Court's dismissal of this complaint be affirmed?

3.  Preliminary injunctive relief "is an extraordinary measure that has been characterized as 'one of the most drastic tools in the arsenal of judicial remedies.' "  A preliminary injunction is granted only upon a clear showing that the plaintiff is entitled to such relief and proof that the circumstances clearly demand it.  Christian Healthcare offered only conjecture that it may someday be wronged, with no demonstration of any real, immediate danger of harm or that it was likely to succeed on the merits of its constitutional challenges. Should the District Court's denial of the motion for preliminary injunction be affirmed?

## INTRODUCTION

This case exemplifies why the Supreme Court has reiterated that allegations of *possible* future constitutional violations, and a plaintiff's speculative fear of being targeted, without demonstrating an injury in fact are insufficient to invoke federal jurisdiction under Article III. The test does not change simply because a case may present significant constitutional questions.

Christian Healthcare Centers, Inc. (Christian Healthcare) argues that any application of Michigan's Elliott-Larsen Civil Rights Act (ELCRA), which now protects against sexual orientation and gender identity discrimination, to it violates its religious freedoms. But Christian Healthcare's fear of enforcement is unfounded. It has not been the subject of any past or pending action by the Michigan Department of Civil Rights or the Michigan Civil Rights Commission. Nor have any similar religious entities been found to be in violation of the ELCRA since its recent expansion.

Further, there is no evidence that these Defendants will fail to consider religious freedoms when investigating Christian Healthcare or

any other entity for possible violations of the ELCRA, especially where the act requires them to do so.

There is likewise no evidence that Michigan Attorney General Dana Nessel has taken any action to enforce Michigan's Equal Accommodations Act (EAA), a criminal statute, against any entity—let alone a religious entity. But it, too, requires consideration of other constitutional rights in its enforcement.

On these facts, the District Court determined that neither act facially fails to recognize religious freedoms and thus do not proscribe the activities in which Christian Healthcare seeks to engage. The court further concluded that Christian Healthcare had not shown a threat of imminent enforcement of either act where there were simply no complaints against it or similar entities. The court thus concluded that Christian Healthcare lacked standing and dismissed its complaint.

Because Michigan's civil rights laws already incorporate religious protections and acknowledge "religion" as a protected civil right, and where there is no evidence that the Defendants have or will fail to consider religious freedoms when investigating a civil rights claim, this

Court should affirm the dismissal of Christian Healthcare's complaint for lack of standing.

## COUNTER-STATEMENT OF THE CASE

Christian Healthcare's case arose after the Michigan Supreme Court held that the ELCRA's "because of sex" language prohibits discrimination based upon sexual orientation. *Rouch World*, *LLC, et al v. Dep't of Civil Rights*, 987 N.W.2d 501 (Mich. 2022).

### A.    A brief chronology of the progression of LGBTQ rights in Michigan.

### The Commission's Interpretive Statement

The ELCRA has long provided protection from discrimination based upon "sex" but, prior to its recent amendment, it did not specify whether the "because of . . . sex" language included protection for individuals based upon sexual orientation or gender identity. *See* Mich. Comp. Laws §§ 37.2102(1), 37.2103(i).

On May 21, 2018, the Michigan Civil Rights Commission (Commission)[1] adopted Interpretive Statement 2018-1, in which it concluded that "sexual orientation" and "gender identity" fall within the meaning of "sex" as used in the ELCRA.  (Verified Complaint, R. 1, Page ID #26.)  The Commission relied on *EEOC v. R.G. & G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560 (6th Cir. 2015), in which this Court held that Title VII's "discrimination because of . . . sex" provision included protection for a transgender Michigan woman.  (Prelim. Injunction Mot., R. 5, Page ID # 338.)  Accordingly, the Commission found "that continuing to interpret the protections afforded by the phrase 'discrimination because of . . . sex' more restrictively by continuing to exclude individuals for reasons of their gender identity or sexual orientation would itself be discriminatory."  (*Id.*)

---

[1] The Commission was established by the Michigan Constitution of 1963 to carry out the guarantees against discrimination articulated in Article 1, § 2.  *See* Mich. Const. 1963, Art. 1, § 2 and Art. 5, § 29.  The Commission's duties are established by law.  *See* Mich. Comp. Laws § 37.2601 *et seq.*

### *Rouch World, LLC, et al v. Dep't of Civil Rights (MDCR)*

*Rouch World* was brought by Rouch World, LLC, a wedding venue that denied wedding venue services for a same sex wedding, and Uprooted Electrolysis, LLC, which denied hair removal services to a transgender woman, seeking declaratory and injunctive relief.[2] *Rouch World*, 987 N.W.2d at 505–06.  Both entities asserted that providing services would violate their religious beliefs.  In December 2020, the trial court held that discrimination because of sex under the ELCRA includes discrimination because of an individual's "gender identity," and granted relief in favor of the MDCR with regard to Uprooted Electrolysis's claim.  *Id*.  However, on the basis of stare decisis, the court denied relief as to the sexual orientation claim.  *Id*.

Regarding, Rouch World's and Uprooted Electrolysis' First Amendment free exercise of religion claim, the trial court concluded that the issue had not "been sufficiently briefed to resolve at this juncture."  (*Rouch World, LLC v. Dep't of Civ. Rights*, unpublished order

---

[2] Rouch World and Uprooted Electrolysis were both the subject of complaints filed with the Michigan Department of Civil Rights due to their failure to provide public accommodations.  *See* Mich. Comp. Laws § 37.2602.

7

of the Court of Claims, R. 20–1, Page ID # 593.)  Uprooted Electrolysis did not appeal the gender identity ruling.

The Michigan Supreme Court granted the MDCR's bypass application challenging the trial court's opinion that ELCRA's "because of sex" provision did not encompass discrimination because of an individual's sexual orientation. *Rouch World*, 987 N.W.2d at 506.  On July 28, 2022, the Michigan Supreme Court held that discrimination on the basis of sexual orientation is discrimination because of sex, and that the denial of "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations" at a "place of public accommodation or public service" on the basis of sexual orientation is discrimination "because of . . . sex" in violation of § 302a of the ELCRA, Mich. Comp. Laws § 37.2302(a).  *Id.* at 519.

The court did not address "[w]hether enforcement under the ELCRA for sexual-orientation and gender-identity discrimination would violate [the] plaintiffs' federal and state constitutional religious liberty protections," because that had "not yet been adjudicated below" and was "not currently before" the court. *Id.* at 506 fn 5.  The *Rouch World* case

was then remanded to the trial court for further proceedings. *Id.* at 519.

On January 27, 2023, the trial court dismissed the case pursuant to stipulation by the parties, leaving the MDCR able to process the administrative complaints previously filed against Rouch World and Uprooted Electrolysis.[3]

### Amendment of the ELCRA to include sexual orientation and gender identity and expression as protected categories

On March 16, 2023, Michigan Governor Gretchen Whitmer signed into law Public Act 6 of 2023, amending the ELCRA to expressly include sexual orientation and gender identity and expression as protected categories.[4]  These amendments will become effective on February 13, 2024.  *See* Mich. Const. 1963, Art. IV, § 27.  In the interim, the *Rouch World* decision continues to govern interpretation of the term "sex" as used in the ELCRA.

---

[3] The Court of Claims' Register of Actions can be found at, RegisterOfActions (michigan.gov).  (accessed December 8, 2023).

[4] Public Act 6 of 2023, can be found at, http://legislature.mi.gov/documents/2023-2024/publicact/pdf/2023-PA-0006.pdf. (accessed December 8, 2023).

### B.    Procedural history

### Christian Healthcare's claims

One month after the Michigan Supreme Court's decision in *Rouch World*, Christian Healthcare sued Attorney General Nessel, John E. Johnson, the Executive Director of the MDCR, and Commission members Portia L. Roberson, Zenna Faraj Elhasan, Gloria E. Lara, Regina Gasco-Bentley, Anupama Kosaraju, Richard Corriveau, and David Worthams (the Commission Defendants), in their official capacities.

Christian Healthcare is a 501(c)(3) non-profit corporation that provides medical services to its selected membership for a monthly membership fee and employs individuals at its clinics in different medical and non-medical positions.  (Verified Complaint, R. 1, Page ID ## 4, 8–9, 10, 19, 21, 23–5.)  It alleged that enforcement of the accommodations, employment, notice and publication provisions in the ELCRA and the publications clause in the EAA violate the First and Fourteenth Amendments by infringing on its religious beliefs.  (Verified Complaint, R. 1, Page ID ## 4–6, 63, 66, 69–70.)

Christian Healthcare requested the same relief in all four counts: declaratory and injunctive relief as to the disputed ELCRA and EAA provisions. (*Id.*, Page ID ## 70–71.) Additionally, Christian Healthcare moved to preliminarily enjoin enforcement of the challenged provisions with regard to its employment choices, pronoun uses, and decisions not to prescribe cross-sex hormones. (Prelim. Injunction Mot., R. 5, Page ID ## 170–75.)

### The District Court dismisses Christian Healthcare's lawsuit and denies its motion for reconsideration

On March 29, 2023, the District Court granted the Defendants' motion to dismiss, concluding that Christian Healthcare failed to "plausibly" allege facts demonstrating that (1) its intended conduct was proscribed by either the ELCRA or the EAA, and (2) that it was subject to "a credible threat of prosecution under either state law." (Opinion and Order, R. 28, Page ID ## 854–77.)

The District Court reasoned that both of Michigan's anti-discrimination statutes "do not 'arguably' provide that religious freedoms will not be considered." (*Id.*, Page ID # 870.) Rather, the ELCRA and the EAA in fact "provide that they will be interpreted in

accordance with other applicable laws." (*Id.*, Page ID # 869.)  The District Court found that Michigan caselaw demonstrates the ELCRA "has been construed in conjunction with constitutional and statutory religious exemptions." (*Id.*, Page ID ## 870–71.)  But, "[e]ven assuming that [Christian Healthcare's] proposed conduct is proscribed by Michigan law," allegations of "subjective chill are not an adequate substitute for a claim of a specific present objective harm or a threat of a specific harm." (*Id.*, Page ID # 872.)  The District Court found Christian Healthcare's allegations of chill were inadequate where it failed to meet the factors set forth in *McKay v. Federspiel*, 823 F.3d 862 (6th Cir. 2016).  The District Court concluded that Christian Healthcare had not "demonstrated Article III standing sufficient to invoke federal-court jurisdiction." (Opinion and Order, R. 28, Page ID # 877.)  As a result, the District Court opined "any decision from it regarding how the statutes might apply . . . would be advisory." (*Id.*)

Christian Healthcare moved for reconsideration, citing statements Defendants made in support of the recent amendments to the ELCRA, and submitting various BFOQ decisions involving religion issued by the MDCR as "new evidence" that refuted Defendants standing argument.

(Motion for Recon, R. 30, Page ID # 880–81.)  The District Court ordered a response, and Defendants opposed the motion.  (Resp to Motion for Recon, R. 33, Page ID # 1010.)  Christian Healthcare then moved to file a supplemental brief in support of reconsideration to bring to the court's attention as additional "new" evidence a complaint filed against a catholic charity that involved fair housing and gender identity discrimination claims.  (Motion for Supp Brf, R. 35, Page ID # 1039.) Defendants opposed that motion as well.  (Resp to Motion to file Supp Brf, R. 37, Page ID # 1064.)

On August 22, 2023, the District Court denied Christian Healthcare's motion for reconsideration and its motion for leave to file a supplemental brief.  (Memorandum Opinion and Order, R. 45, Page ID # 1193.)  The District Court determined it had not erred in its standing analysis, and found that the BFOQ decisions, in fact, proved that Michigan had granted BFOQ exemptions based on religion to different kinds of employers.  (*Id.*, Page ID # 1199–1200.)  And the complaint against the catholic charity was distinguishable as it involved "entities, facts, and laws different from those at issue[.]"  (*Id.*, Page ID # 1201.)

Christian Healthcare thereafter filed its notice of appeal. (Notice of Appeal, R. 46, Page ID ## 1206–08.)

## STANDARD OF REVIEW

This Court reviews a district court's dismissal of a complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of standing *de novo*. *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 348 (6th Cir. 2007) (internal citation omitted); *McCormick v. Miami Univ.*, 693 F.3d 654, 658 (6th Cir. 2012) (citing *Lovely v. United States*, 570 F.3d 778, 781 (6th Cir. 2009)). Because Christian Healthcare's "suit was dismissed at the pleading stage, [the Court] must accept as true all material factual allegations of the complaint" and construe them in Plaintiff's favor. *Glenn v. Holder*, 690 F.3d 417, 420 (6th Cir. 2012) (quoting *White v. United States*, 601 F.3d 545, 551 (6th Cir. 2010)).

This Court reviews the denial of a motion for reconsideration for abuse of discretion. *Int'l Outdoor, Inc. v. City of Troy, Michigan,* 77 F.4th 432, 438 (6th Cir. 2023). Likewise, this Court has applied an abuse of discretion standard when evaluating a court's denial of a request for supplemental briefing. *AES-Apex Emp. Servs., Inc. v. Rotondo*, 924 F.3d 857, 866–67 (6th Cir. 2019); *Jomaa v. United States*,

940 F.3d 291, 299 (6th Cir. 2019).  When this Court reviews for abuse of

discretion, it will reverse only when it "is firmly convinced that a

mistake has been made." *Bush v. Rauch*, 38 F.3d 842, 848 (6th Cir.

1994).

## ARGUMENT

I. **The District Court correctly held that Christian Healthcare's complaint failed to demonstrate standing sufficient to invoke federal-court jurisdiction.**

    A. **Standing requires a concrete, actual or imminent harm, not a generalized grievance against government conduct or a mere subjective allegation of chill.**

To establish standing, Christian Healthcare had to show three

things: (1) that it suffered an injury, (2) caused by the Defendants,

(3) that a judicial decision could redress.  *Lujan v. Defs. of Wildlife*, 504

U.S. 555, 560–61 (1992).  The burden of establishing standing rests

with Christian Healthcare.  *Id*. at 561.  And it "bears the burden of

showing that [it] has standing for each type of relief sought." *Summers

v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).  *See also Town of

Chester, N.Y. v. Laroe Estates, Inc.*, ___ U.S. ___, 137 S. Ct. 1645, 1650;

198 L.Ed.2d 64 (2017) ("a plaintiff must demonstrate standing for each

claim he seeks to press and for each form of relief that is sought.")
(citation omitted). Further, "Supreme Court and Sixth Circuit caselaw
have consistently held that 'the court must determine whether standing
exists at the time of the filing of the complaint only.'" *Graveline v.
Benson*, 992 F.3d 524, 532 (6th Cir. 2021) (cleaned up).

For purposes of standing, an injury means the "invasion of a
legally protected interest which is (a) concrete and particularized, and
(b) 'actual or imminent.'" *Daunt v. Benson,* 956 F.3d 396, 417 (6th Cir.
2020) (quoting *Lujan*, 504 U.S. at 560). In establishing an injury in
fact, "[a] generalized grievance against governmental conduct is
insufficient to confer standing upon a party." *Id.* (citing *United States v.
Hays*, 515 U.S. 737, 743 (1995)). For this reason, plaintiffs bringing
First Amendment claims "must present more than 'allegations of a
subjective chill.'" *Bigelow v. Virginia,* 421 U.S. 809, 816–17 (1975)
(quoting *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972)). *See United
Presbyterian Church in the U.S.A. v. Reagan*, 738 F.2d 1375, 1378 (D.C.
Cir., 1984) ("All of the Supreme Court cases employing the concept of
'chilling effect' involve situations in which the plaintiff has
unquestionably suffered some concrete harm (past or immediately

16

threatened) apart from the 'chill' itself."). *See also Parsons v. United States Dep't of Justice,* 801 F.3d 701, 710 (6th Cir. 2015) (noting that "imminent" means "'certainly impending,' in contradistinction to 'allegations of possible future injury'") (quoting *Clapper v. Amnesty Int'l.,* 568 U.S. 398, 409 (2013)). Further, the "chill" on First Amendment expression normally stands as the "*reason* why the governmental imposition is invalid rather than as the harm which entitles [a party] to challenge it." *Adult Video Ass'n v. U.S. Dep't of Just.,* 71 F.3d 563, 566 (6th Cir. 1995) (citing *United Presbyterian Church in the U.S.A.,* 738 F.2d at 1378). "Allegations of a subjective 'chill' are not an adequate substitute for a claim of a specific present objective harm or a threat of specific future harm[.]" *Laird,* 408 U.S. at 13–14.

**B.    Christian Healthcare failed to sufficiently allege an injury traceable to Defendants to support pre-enforcement review.**

"In a pre-enforcement challenge, whether the plaintiff has standing to sue often turns upon whether [it] can demonstrate an 'injury in fact' before the state has actually commenced an enforcement proceeding against [it]." *Kiser v. Reitz,* 765 F.3d 601, 607 (6th Cir.

17

2014). The Supreme Court has recognized that "[a]n allegation of future injury may" satisfy the injury-in-fact requirement if the alleged "threatened injury is 'certainly impending,' or there is a 'substantial risk that the harm will occur.'" *Susan B. Anthony List v. Driehaus,* 573 U.S. 149, 158 (2014) (quoting *Clapper v. Amnesty Int'l.*, 568 U.S. 398, 408–09, 413–14, n5 (2013)). *See also Parsons,* 801 F.3d at 710 (noting that "imminent" means "'certainly impending,' in contradistinction to 'allegations of possible future injury'") (quoting *Clapper,* 568 U.S. at 409).

The test for whether an injury is sufficiently imminent to support standing requires Christian Healthcare to establish (1) an intent to engage in a course of conduct arguably affected with a constitutional interest, (2) that this course of conduct was arguably proscribed by the ELCRA and the EAA, and (3) that if Christian Healthcare pursued such a course of conduct, there was a credible threat that Defendants would seek to enforce the ELCRA or the EAA against it. *Kentucky v. Yellen*, 54 F.4th 325, 336 (6th Cir. 2022) (citing *Susan B. Anthony List*, 573 U.S. at 161–64).

Based on the allegations in its complaint, Christian Healthcare sufficiently alleged it intended to engage in a course of conduct arguably affected with a constitutional interest. But it failed to sufficiently allege that course of conduct was arguably proscribed by the challenged statutes, and that a credible threat of prosecution existed at the time it filed its complaint. *Graveline*, 992 F.3d at 532.

### 1. Christian Healthcare's intended conduct is not arguably proscribed by the ELCRA or the EAA.

On appeal, as it did below, Christian Healthcare offers a parade of possibilities based on its "highly speculative fear" and its own interpretation of the ELCRA and the EAA, to argue that it would be required to use patients' chosen pronouns irrespective of their biological sex; forced to offer cross-sex hormones to facilitate gender transition; restricted from hiring, recruiting, and retaining employees who share its religious beliefs; and prohibited from publishing its pronoun, cross-sex hormone, and employment policies. Activities which it desires to engage in. But the District Court correctly held that Christian Healthcare did not plausibly allege that such conduct is arguably proscribed by the ELCRA or the EAA. (Opinion and Order, R. 28, Page

ID ## 869–77.)  That is because the ELCRA and the EAA do not proscribe activity otherwise protected by the First Amendment.

Christian Healthcare, as a medical facility, may be subject to the ELCRA as an employer, Mich. Comp. Laws § 37.2201(a), and as a place of public accommodation to the extent its services are extended to the public, Mich. Comp. Laws § 37.2301(a).  But the ELCRA does not facially proscribe Christian Healthcare from exercising constitutionally protected religious rights.  This is because the ELCRA prohibits discrimination by a place of public accommodation "[e]xcept where permitted by law," which includes constitutional law.  Mich. Comp. Laws § 37.2302; *Michigan Dept. of Civil Rights ex rel. Forton v. Waterford Tp. Dept. of Parks & Recreation*, 387 N.W.2d 821 (Mich. 1986).  And the construction provision of the ELCRA generally provides that it "shall not be construed as preventing . . . securing civil rights guaranteed *by law* other than the civil rights set forth in this act." Mich. Comp. Laws § 37.2705(1) (emphasis added).  Although the term "law" in this section does not appear to have been interpreted, it is reasonable to conclude that it, like § 2302, includes constitutional law. *See, e.g.*, *Champion v. Secretary of State*, 761 N.W.2d 747, 752 (Mich.

App. 2008) ("[T]he use of the term 'law' here includes constitutional provisions that would carve out a religion-based exception to the social security number requirement.")  Further, in the employment context, discrimination based on a protected category is permissible where it is a "bona fide occupational qualification reasonably necessary to the normal operation of the business[.]"  Mich. Comp. Laws § 37.2208.[5]  These provisions requiring the ELCRA to be interpreted in conjunction with other laws, including the constitution, were not removed from the statute by the recent amendments.  (*See* Memorandum Opinion and Order, R. 45, Page ID # 1198.)

Turning to the EAA, it is unclear from the plain language of the act whether its prohibitions with respect to public accommodations apply to Christian Healthcare as a medical facility.  *See* Mich. Comp. Laws §§ 750.146, 750.147.[6]  Regardless, like the ELCRA, its nondiscrimination provision is "subject [ ] to the conditions and

---

[5] If Christian Healthcare was unsure regarding the application of these exceptions to its activities, it could have requested a declaratory ruling from the Commission before filing suit.  Mich. Admin. Code, R. 37.20.

[6] It is also unclear whether the EAA's prohibition of discrimination based on "sex" includes sexual orientation and gender identity as no Michigan court has addressed the EAA's specific language.

limitations *established by law*[.]"  Mich. Comp. Laws § 750.146

(emphasis added.)  There is no reason to presume that the word "law"

as used in the EAA does not also include constitutional law.

Therefore, as the District Court determined, while Michigan

undertakes appropriate efforts to ensure its citizens are not subjected to

discrimination, its laws recognize there may be exceptions to these

prohibitions created by other laws, including the constitution. (Opinion

and Order, R. 28, Page ID # 869–70.)  And while these provisions may

not be as express as Christian Healthcare desires, the Supreme Court

has recognized that statutory exemptions are not necessarily required

for the protection of constitutional rights.  *See Employment Div., Dept.*

*of Human Resources of Ore. v. Smith*, 494 U.S. 872, 890 (1990) ("to say

that a non- discriminatory religious-practice exemption is permitted, or

even that it is desirable, is not to say that it is constitutionally required,

and that the appropriate occasions for its creation can be discerned by

the courts").[7]

---

[7] Michigan's Constitution and anti-discrimination laws recognize "religion" as both a protected constitutional and civil right.  *See* Mich. Const. 1963, Art. 1, § 2, Art. 5, § 29, Mich. Comp. Laws § 37.2102, and Mich. Comp. Laws § 750.146.

Moreover, as the District Court observed, Michigan caselaw confirms the consideration of religious freedoms when balancing civil rights protections.  (Opinion and Order, R. 28, Page ID # 870-71.)  There are numerous decisions demonstrating Michigan considers religious freedoms and provides exemptions for religious practices under the ELCRA.  *See, e.g., Porth v. Roman Catholic Diocese*, 532 N.W.2d 195, 200 (Mich. Ct. App. 1995); *Assemany v. Archdiocese of Detroit*, 434 N.W.2d 233, 238 (Mich. Ct. App. 1988); *Weishuhn v. Catholic Diocese*, 756 N.W.2d 483, 488–89, 500 (Mich. Ct. App. 2008); *McLeod v. Providence Christian School*, 408 N.W.2d 141, 151 (Mich. Ct. App. 1987).  As the District Court noted, Michigan courts have determined that the ministerial exception, a "nonstatutory, constitutionally compelled exception to the application of employment discrimination and civil rights statutes to religious institutions and their 'ministerial' employees," "generally bars inquiry into a religious institution's underlying motivation for a contested employment decision." *Weishuhn*, 756 N.W.2d at 486.  These employer-related cases demonstrate the ELCRA is, indeed must be, interpreted in conjunction

with the varied First Amendment protections afforded religious
entities.[8]

Notwithstanding the exemptions provided for by statute and in
Michigan law, Christian Healthcare appears to argue on appeal, as it
did below, that any complaint filed against it, in and of itself, violates
its religious freedoms, despite courts having considered religious
freedoms in conjunction with Michigan's anti-discrimination provisions.
There is no authority for the provision that a religious entity's religious
rights provide it with immunity from suit, an investigation, etc, as
religious freedoms must be weighed against governmental interests
based on the particular facts of each case. *Assemany,* 434 N.W.2d at
236–37. The Supreme Court has expressly held that "the right of free
exercise does not relieve an individual of the obligation to comply with
a valid and neutral law of general applicability on the ground that the
law proscribes (or prescribes) conduct that his religion prescribes (or

---

[8] In *Our Lady of Guadalupe School v. Morrissey-Berry*, 140 S. Ct. 2049,
2060 (2020), the Supreme Court observed that "[a]mong other things,
the Religion Clauses protect the right of churches and other religious
institutions to decide matters of faith and doctrine without government
intrusion."

proscribes)." *Employment Div., Dept. of Human Resources of Ore.,* 494 U.S. at 879 (cleaned up).

Here, the District Court correctly held that neither the ELCRA nor the EAA facially fails to recognize religious freedoms like those asserted by Christian Healthcare. (Opinion and Order, R. 28, Page ID #871; Memorandum Opinion and Order, R. 45, Page ID # 1197-99.) And the "mere existence of a statute, which may or may not ever be applied to plaintiffs, is not sufficient to create a case or controversy within the meaning of Article III." *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 293 (6th Cir. 1997) (citation omitted).

> **2.    Christian Healthcare failed to sufficiently allege a credible threat of enforcement under the ELCRA or the EAA.**

Again, to avoid dismissal, Christian Healthcare had to demonstrate it had standing at the time it *filed* its complaint. *Graveline*, 992 F.3d at 532. Even so, since the issuance of the interpretive statement five years ago and the *Rouch World* decisions over a year ago, Christian Healthcare still cannot identify any pending complaint, investigation, charge or prosecution against it. Thus, Christian Healthcare's claim that it faces a credible threat of

enforcement warranting pre-enforcement review because it "is an object of Michigan's laws" (App's Brief, ECF No. 18, Page ID # 44) is wholly dependent upon speculation as to how the statutory language will be applied or if it will be applied against them; and presumes without any credible evidence that Defendants will not appropriately consider applicable religious exemptions if a complaint is filed against it.

It is important to recognize that the Attorney General has no statutory authority to enforce the ELCRA, but as a prosecutor she can enforce the criminal provisions of the EAA. Conversely, the MDCR and Commission Defendants have express authority to enforce the ELCRA, Mich. Comp. Laws § 37.2601 *et seq.*, but no authority to enforce the EAA as a criminal statute. Christian Healthcare must establish standing as to each statute and Defendant.

Again, "allegations of a subjective chill are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm" for purposes of establishing an injury-in-fact. *Laird,* 408 U.S. at 13-14. The "chilling effect" associated with a potentially unconstitutional law being "'on the books'" is insufficient to "justify federal intervention" in a pre-enforcement action. *Whole*

26

*Woman's Health v. Jackson*, ___ U.S. ___, 142 S. Ct. 522, 538 (2021) (quoting *Younger v. Harris*, 402 U.S. 37, 51 (1971)). But a credible threat of enforcement may exist where a plaintiff alleges a subjective chill on protected speech *and* can point to indicators of imminent enforcement, such as those discussed in *McKay v. Federspiel*, 823 F.3d 862, 869 (6th Cir. 2016). *Fisher v. Thomas*, 52 F.4th 303, 307 (6th Cir. 2022). *See also Plunderbund Media, L.L.C. v. DeWine*, 753 F. App'x 362, 366–67 (6th Cir. 2018).

In *McKay*, this Court identified factors to determine whether a threat of enforcement is credible: (1) a history of past enforcement against the plaintiffs or others; (2) enforcement warning letters sent to the plaintiffs regarding their specific conduct; (3) an attribute of the challenged statute that makes enforcement easier or more likely, such as a provision allowing members of the public to initiate enforcement actions; and (4) the defendants refusal to disavow enforcement of the challenged statute against a particular plaintiff. *McKay*, 823 F.3d at 869. Some combination of these factors is required. *Id.*

Here, even assuming Christian Healthcare plausibly alleged a subjective chill, as the District Court determined the *McKay* factors did not weigh in its favor.  (Opinion and Order, R. 28, Page ID #873–77.)

### History of past enforcement of the ELCRA or EAA by Defendants

Regarding a history of past enforcement, there is no dispute that no Defendant has taken any action to enforce the ELCRA against Christian Healthcare either before or after the filing of its complaint. Likewise, at the time Christian Healthcare filed its complaint, no Defendant had taken any action to enforce the law against a similarly situated religious entity based on the entity's intent to engage in conduct similar too that proposed by Christian Healthcare.[9]

This makes sense because Christian Healthcare filed its complaint one month after the *Rouch World* decision before its effect had any time to percolate.  And recall that *Rouch World* left unanswered how its expansion of the rights protected by the ELCRA intersected with

_____

[9] While Christian Healthcare has also filed a motion asking this Court to allow it to supplement the record to include information regarding other complaints filed with the MDCR (ECF No. 19-1), those cases do not involve similar entities, and standing is to be evaluated at the time of the filing of the complaint.  *Graveline*, 992 F.3d at 532.

religious freedoms. The MDCR and Commission Defendants have yet to consider or apply the ELCRA's protections from discrimination based on sexual orientation and gender identity to a complaint against an entity like Christian Healthcare and assess First Amendment religious protections.  Christian Healthcare's speculation that Defendants will apply the ELCRA in an unconstitutional manner is just that—speculation.  *See Doe v. University of Michigan*, 78 F.4th 929, 944 (6th Cir. 2023) (noting "the Supreme Court has averred its 'reluctan[ce] to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment.'") (quoting *Clapper*, 568 U.S. at 413.)

Not surprisingly then, as the District Court observed, Christian Healthcare could not cite any Michigan cases interpreting the ELCRA as requiring a healthcare provider to "provide gender-transition services." (Opinion and Order, R. 28, Page ID # 874.)  It also cited no Michigan cases interpreting the ELCRA as prohibiting a religious employer who meets the BFOQ criteria from asking prospective employees about whether they can follow and effectively communicate certain beliefs; seeking, recruiting, and hiring employees who agree

with certain religious beliefs; or posting employment opportunities that indicate a desire to hire employees who share certain beliefs. (*Id.*)

Further, as the Court correctly determined, Attorney General Nessel has not sought at any time, before or after the complaint, to enforce the EAA against Christian Healthcare or another religiously affiliated healthcare provider, or any other religious entity. (*Id.*) Even assuming the EAA applies to Christian Healthcare, there is no evidence of *any* past criminal enforcement of the statute.

Christian Healthcare simply did not allege any history of past enforcement of the ELCRA or the EAA by the Defendants or their predecessors in a manner relevant to the claims made here.

The cases cited by Christian Healthcare do not help it. For example, in *Block v. Canepa*, 74 F.4th 400, 409–411 (6th Cir. 2023), unlike the ELCRA or the EAA, Ohio's statute proscribed the very conduct in which the plaintiff wished to engage and Ohio had a history of enforcement of that statute for the same, specific conduct. But here, Christian Healthcare identified no evidence of past enforcement against a religious entity for the conduct in which it wished to engage, and perhaps most importantly, there is no indication in *Block* that Ohio's

statute requires consideration of other laws. The ELCRA, however, on its face and as applied, and the EAA, must be construed in conjunction with other laws. As the District Court concluded, the *Block* case was "not a good fit." (Memorandum Opinion and Order, R. 45, Page ID #1203.)

Likewise, *Speech First, Inc. v. Schlissel*, 939 F.3d 756 (6th Cir. 2019), is distinguishable. *Speech First* involved a facial challenge to definitions of bullying and harassment in a university policy and involved a response team's actions that were found to have constituted an "implicit threat of punishment and intimidation to quell speech." *Id.* at 765. The conduct at issue, bullying and harassment, *were* the explicit conduct the university policy prohibited. Unlike *Speech First, Inc.*, Christian Healthcare's complaint did not identify a religious entity subject to an adverse action—by any of the Defendants—because of conduct in which it intended to engage. (*Id.*)

### Threats of enforcement of the ELCRA or EAA

Turning to the threat of enforcement factor, no warning letters or threats of enforcement have been issued or made to Christian Healthcare by any of the Defendants under either statute. Christian

Healthcare failed to allege facts demonstrating that any of the Defendants were poised to initiate an enforcement action against it. Christian Healthcare's reliance upon amicus briefs joined by the Attorney General or a resolution passed by the Commission on behalf of LGBTQ+ anti-discrimination efforts do not show a "clear threat of prosecution" against Christian Healthcare. Again, the Attorney General does not enforce the ELCRA and there is no history of criminal enforcement of the EAA by her or any previous Attorney General. (Opinion and Order, R. 28, Page ID # 875.) Further, the Commission's enforcement of the ELCRA is pursuant to constitutional and statutory mandate. *See* Mich. Const. 1963, Art. V, § 29. The fact that the Commission is generally charged with prohibiting discrimination does not mean it will not consider a religious entity's constitutionally protected religious freedoms, as it has done in various BFOQ approvals.

### *Ease of enforcement of the ELCRA or EAA*

With regard to the third *McKay* factor, the District Court concluded that while private individuals are statutorily empowered to file an administrative complaint against Christian Healthcare under the ELCRA, the ELCRA also provides that such a complaint may not be

premised on discrimination that is "permitted by law."  Mich. Comp.

Laws § 37.2302(a).  (Opinion and Order, R. 28, Page ID # 875.)  Both

the ELCRA and the EAA expressly provide that they will be interpreted

in accordance with other applicable laws.

### Disavowal of enforcement of the ELCRA or EAA

Finally, Christian Healthcare relies heavily upon the Defendants

inability to disavow enforcement of the ELCRA or EAA.  But this

reliance is misplaced.

First, disavowal is not a requirement for a finding of a lack of

standing.  *McKay* requires that a combination of the factors be met.

*McKay*, 823 F.3d at 869.  Even if the "disavowal" factor weighs in favor

of Christian Healthcare, the others plainly do not.  And second,

Defendants, as state officers, cannot generally disavow application of

the ELCRA and the EAA which are broad antidiscrimination

provisions.  While entities asserting a religious freedom may be

exempted from the statutory requirements as permitted by law, the

religious exemptions are fact dependent.  It would be impossible for

Defendants to disavow application of statutes as broad as the ELCRA

and the EAA as to any religious entity where the religious freedom

inquiry is fact dependent. The District Court agreed. (Opinion and Order, R. 28, Page ID # 876) (citing to *Davis v. Colerain Twp., Ohio*, 51 F.4th 164, 174 (6th Cir. 2022) (determining that the fact that the police department had not "disavowed enforcement" of its Facebook Rule "does nothing to show that [the plaintiff] plans to engage in speech that might arguably fall within the rule").)

Christian Healthcare alleged no facts or evidence demonstrating that its religious freedoms will be denied where the ELCRA and the EAA expressly provide they are to be construed with other laws, and it is speculative to anticipate that Defendants will pursue a claim or charge against Christian Healthcare. Christian Healthcare cites to cases in support of pre-enforcement standing that are not on point. The cases upon which it relies are cases with statutes that proscribe very specific conduct, which courts found created a credible threat.

For example, in *Green Party of Tenn v. Hargett*, 791 F.3d 684, 690 (6th Cir. 2015), the statute specifically required a minor political party to file an affidavit that it does not advocate the overthrow of local, state, or national governments by force or violence before its nominees are

placed on the ballot.  The statute proscribed specific conduct applicable to a specific entity, and the state refused to disavow.  *Id*. at 696.

Here, the ELCRA and the EAA broadly prohibit discrimination, but the statutes do not specify these prohibitions apply to religious entities regardless of the constitutional freedoms of which they may avail themselves.  The ELCRA provides that religious entities have an exemption in the employment context.  Mich. Comp. Laws § 37.2208.  And the ELCRA specifies it is applicable, as to public accommodations, "except where permitted by law."  The EAA's provisions are also "subject [ ] to the conditions and limitations established by law."  Mich. Comp. Laws § 750.146.  As a result, this case is unlike *Hargett*.

Similarly, *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021 (6th Cir. 2022), is also distinguishable.  In *Universal Life Church Monastery Storehouse*, the statute "explicitly bans" the very conduct in which the plaintiff in that case sought to engage.  *Id*. at 1034.  Neither the ELCRA nor the EAA contain a similar explicit ban on the activities in which Christian Healthcare seeks to engage.  The statutes at issue generally proscribe discrimination for places of public

accommodation unless permitted by law. So, the statutes require consideration of constitutionally protected religious freedoms.

Consequently, the *McKay* factors do not weigh in favor of Christian Healthcare. As a result, it failed to demonstrate a credible threat of enforcement. For the same reasons, it has not shown a "substantial risk" either. *See Susan B. Anthony List,* 573 U.S. at 158.

While Christian Healthcare argues on appeal that Michigan aggressively enforces its civil rights laws, and as a result Christian Healthcare faces a threat of enforcement, that inquiry is too broad. The issue is whether Defendants will fail to consider established religious freedoms in applying Michigan's civil rights laws to Christian Healthcare or similar entities. The fact that the MDCR may investigate an administrative complaint or bring a charge of discrimination based on sexual orientation or gender identity against a secular entity or one that does not claim a religious exemption is irrelevant to Christian Healthcare's claims. Defendants have not denied that they have interpreted the ELCRA's "because of sex" provision to include protection for gender identity and sexual orientation. But the issue is whether, in the application of the laws, Defendants have or will refuse to consider

religious freedom laws—which they have not and will not because they cannot do so.

Finally, Christian Healthcare's concerns regarding any Defendant's position or representations regarding possible limitations to religious freedoms are also too broad. The Attorney General has not brought any criminal charges against a religious entity under the EAA. To the extent that the MDCR has received administrative complaints from citizens, the District Court properly found that the scope of an investigation, any determination that actionable discrimination occurred, and any determination regarding grounds to issue a charge is dictated by the facts and applicable laws, including constitutional law which, again, the ELCRA incorporates. (Memorandum Opinion and Order, R. 45, Page ID #1201.) Christian Healthcare alleged no facts or evidence suggesting that the MDCR would not consider religious freedoms in the course of an administrative proceeding.

There is no First Amendment violation "in the absence of some actual or threatened imposition of governmental power or sanction." *Penthouse International, Ltd. v. Meese*, 939 F.2d 1011, 1015 (D.C. Cir. 1991). Here, Christian Healthcare has not shown that it faces

imminent investigation or prosecution under the ELCRA or the EAA, or that it has been threatened with such actions. Further, both acts are expressly to be construed with other laws, which includes religious protections. On these facts, Christian Healthcare failed to sufficiently allege an actual or imminent injury traceable to any action of the Defendants. Accordingly, this Court should affirm the District Court's dismissal for lack of standing.

## II.    Christian Healthcare's claims are not ripe for review because it has not demonstrated a credible threat of enforcement of the ELCRA or the EAA.

In its opinion, the District Court did not separately rule on ripeness. (Opinion and Order, R. 28, fn 2, Page ID #866.) But, based on its analysis that Christian Healthcare lacked standing, the court noted that its "analysis [of ripeness] would likely lead to the same result," i.e., that its claims are unripe. (*Id.*)

On appeal, Christian Healthcare argues that its claims are ripe because it established a credible threat of enforcement of Michigan's anti-discrimination laws. (App's Brief, ECF No. 18, Page ID # 54–56.) It further alleges that that these laws pose threats to its religious

beliefs in terms of its postings, policies on pronouns and cross-sex hormones, and its employment decisions. (*Id.*)

This Court need not address ripeness either if it agrees with the District Court that Christian Healthcare lacked standing, which it should. Nevertheless, Christian Healthcare's claims are not ripe for review for the same or similar reasons it lacks standing.

### A. For a claim to be ripe, the factual record must be sufficiently developed and a credible threat of harm must exist, and the denial of review must create a hardship.

Ripeness "shares a foundation in Article III's case-and-controversy requirement [of standing]," *Miller v. City of Wickliffe, Ohio*, 852 F.3d 497, 503 (6th Cir. 2017), and often "boil[s] down to the same question[,]" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128 n.8 (2007).

The ripeness doctrine is "designed 'to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements.' " *Ky. Press Ass'n, Inc. v. Ky.*, 454 F.3d 505, 509 (6th Cir. 2006) (citation omitted). Questions of ripeness arise in those cases "'anchored in future events that may not occur as anticipated, or at all.'" *Id.* (quoting *Nat'l Rifle Ass'n of Am.*, 132 F.3d at 294).

39

In order to establish that a claim is "ripe for judicial resolution, [courts] ask two basic questions: (1) is the claim 'fit[ ] … for judicial decision' in the sense that it arises in a concrete factual context and concerns a dispute that is likely to come to pass? and (2) what is 'the hardship to the parties of withholding court consideration'?" *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008) (en banc) (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 149 (1967)). "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.' " *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)). Thus, while "the ripeness requirement is somewhat relaxed in the First Amendment context, there nonetheless must be a credible fear of enforcement." *Norton v. Ashcroft*, 298 F.3d 547, 554 (6th Cir. 2002) (citing *Marchi v. Bd. of Coop. Educ. Servs. of Albany*, 173 F.3d 469, 479 (2d Cir. 1999)). *See also, Winter v. Wolnitzek*, 834 F.3d 681, 687 (6th Cir. 2016) ("Whether the plaintiffs have standing and whether their claims are ripe come to the same question: Have they established a credible threat of enforcement?")

Christian Healthcare fails to meet these requirements.

### 1. Christian Healthcare failed to sufficiently allege a credible threat of enforcement under the ELCRA or the EAA.

Again, a chilling effect "has never been considered a sufficient basis, in and of itself, for prohibiting state action." *Younger*, 401 U.S. at 51; *see also Marchi*, 173 F.3d at 479 (holding that anti-abortion activists' as-applied challenge to Freedom of Access to Clinic Entrances Act was not ripe for review because they did not show that the alleged "pattern of activity" would ever come to pass). Instead, courts "look at each case to determine the consequences of staying . . . [its] hand." *Miles Christi Religious Order v. Twp. of Northville*, 629 F.3d 533, 537 (6th Cir. 2010).

For the same reasons discussed in Argument I.B.2. with respect to standing, Christian Healthcare failed to sufficiently allege a credible threat of enforcement for purposes of establishing ripeness. But briefly, since the Commission's adoption of its interpretive statement in 2018 and the *Rouch World* decisions, none of the disputed provisions in the ELCRA or the EAA have been interpreted by Defendants as Christian Healthcare speculates. And none of the Defendants have directly, or

even indirectly, interfered with Christian Healthcare's business, medical practice, employment decisions, or infringed on its religious beliefs, as an employer or medical service provider.

Here, although Christian Healthcare has provided "statements it wants to post, described its policies on pronouns, cross-sex hormones, and employment," and detailed the employment positions that it contends "must be filled with someone who shares" it religious beliefs, it has not sufficiently alleged an imminent threat of investigation or prosecution because of its religious beliefs. (App's Brief, ECF No. 18, Page ID # 55.)

There is no indication that Christian Healthcare will be targeted for disfavored treatment or that its speech or association will be chilled. Christian Healthcare's complaint contained only abstract allegations anchored in future events that might not occur at all—or might occur differently than Christian Healthcare anticipates.

The MDCR is charged with receiving, initiating, conciliating, adjusting, disposing of, issuing charges, and holding hearings on complaints alleging a violation of the ELCRA. Mich. Comp. Laws § 37.2602(c). But, in its complaint, Christian Healthcare did not allege

that a complaint had been filed with the MDCR against it. Nor did Christian Healthcare's complaint allege that anyone has threatened to file such a complaint. Additionally, despite the complaint's many paragraphs outlining the burdens of the MDCR's investigatory process (Verified Complaint, R. 1, Page ID ## 42-43), Christian Healthcare has not claimed the MDCR has *sua sponte* or responsively initiated or threatened to initiate an investigation of Christian Healthcare in the wake of the Michigan Supreme Court's recent decisions in *Rouch World, LLC*. (*Id.*, Page ID # 27.)

In this case, Christian Healthcare is simply speculating on how Defendants will interpret the law and apply it to an undetermined set of facts in the context of a future administrative complaint that may never be filed. *See Doe*, 78 F.4th at 944–45 (concluding claim was not ripe for adjudication where disciplinary investigation had not concluded at the time the complaint was filed and the outcome of the investigation may not have occurred as the plaintiff feared).

Likewise, despite her authority to prosecute criminal violations under the EAA, Mich. Comp. Laws § 750.147, Attorney General Nessel has not prosecuted or threatened prosecution against Christian

Healthcare or any other entity, religious or otherwise, under that provision. Indeed, there is no case law demonstrating any previous Attorney General has filed an action to criminally enforce the EAA.

Christian Healthcare simply failed to sufficiently plead in its complaint a credible threat of enforcement under the ELCRA or the EAA.

### 2. Christian Healthcare's claims do not arise out of sufficiently concrete facts to support judicial review.

Here, the facts as alleged are not sufficiently concrete to allow for adjudication. *See Marchi*, 173 F.3d at 478 (finding claim unripe when it "would be forced to guess at how [the defendant] might apply the . . . directive). In the employment context, Christian Healthcare's request for relief would force the District Court to speculate on things such as whether Christian Healthcare would be granted a BFOQ exemption under the ELCRA if it exercised its option to apply for one—which it has thus far not done. *See* Mich. Comp. Laws § 37.2208. Christian Healthcare's complaint acknowledges that "the Department may make individualized exemptions for employers who make a 'sufficient showing' that religion…is a bona fide occupational qualification

reasonably necessary to the normal operation of the business or enterprise." (Verified Complaint, R. 1, Page ID # 33).

Similarly, in the public accommodation context, Christian Healthcare would force the District Court to speculate on whether any of its paid, selected members would seek gender-affirming services or care or complain about the use of pronouns. This forces the court to speculate as to how the MDCR, if it *did* launch an investigation based on complaints or reports of sexual orientation or gender identity discrimination, would choose to address religious rights in relation to the ELCRA based on the act's specific caution that it "shall not be construed as preventing the commission from securing civil rights guaranteed by law other than the civil rights set forth in this act." Mich. Comp. Laws § 37.2705(1). Again, the Commission has not put out an interpretive statement or otherwise opined on that issue. Neither has Attorney General Nessel.

While Christian Healthcare made many factual allegations in its complaint, its alleged fear that some type of action will be taken against it and how such an action might be resolved by Defendants are both

speculative and hypothetical.  Thus, its claims do not arise in a

sufficiently concrete factual context to make them fit for adjudication.

### 3.    Christian Healthcare has not shown sufficient hardship absent judicial review.

At this time, there is no evidence that Christian Healthcare will

suffer a hardship if judicial review is denied.  Given that no action has

been taken against it, no investigation launched or threatened, no

complaint filed against it with the MDCR, and there is no indication

that the Attorney General is poised to criminally prosecute it, its

alleged hardships are too speculative to support judicial review.

Contrary to claims in its complaint, Michigan law has not been

definitively interpreted to prohibit the kinds of activities Christian

Healthcare alleges to be at risk.  Again, it has only been a little over a

year since the decision in *Rouch World* issued and the amendments to

the ELCRA are not yet effective.  In the employment arena, for

example, Christian Healthcare cites no Michigan cases interpreting

Michigan law as prohibiting a religious employer from asking

prospective employees about whether they can follow and effectively

communicate certain beliefs; seeking, recruiting, and hiring employees

who agree with certain religious beliefs; or posting employment opportunities that indicate a desire to hire employees who share certain religious beliefs. (Verified Complaint, R. 1, Page ID ## 30–32). And in the public accommodations arena, Christian Healthcare cites to no Michigan cases interpreting the ELCRA or the EAA's provisions as requiring all healthcare providers to provide cross-sex hormones, if they would provide similar treatments for other purposes, or use patient's chosen pronouns. (Verified Complaint, R. 1, Page ID ## 35, 37 fn 7, relying only on other jurisdictions.) The absence of state precedent addressing religious exemptions under the ELCRA post-*Rouch World* further lessens the possibility of an *impending* investigation and prosecution and underscores that this lawsuit is premature.

Christian Healthcare can continue to engage in its mission of delivering faith-based healthcare without losing its opportunity to file a future lawsuit if specific action is taken or threatened against it. In the meantime, it can await a future case where Michigan courts grapple with the question the Michigan Supreme Court left unanswered in *Rouch World* (due to the plaintiff's failure to preserve the issue of religious rights for appellate review). And if it is unsure of how the

Commission would apply the Michigan Supreme Court's decision, it can request a declaratory ruling. Mich. Admin. Rules, R. 37.20. Finally, nothing is preventing Christian Healthcare from filing an application for a BFOQ exemption under Mich. Comp. Laws § 37.2208, other than its mere prediction that the process would be futile.

Any hardship that Christian Healthcare is experiencing now is of its own making—not Defendants—and it provides no grounds for reviewing its otherwise unripe claims.

### III. The District Court properly declined to address Christian Healthcare's motion for preliminary injunctive relief where the court determined it lacked subject-matter jurisdiction.

In its principal opinion below, the District Court concluded that because Christian Healthcare had not "demonstrated Article III standing sufficient to invoke federal-court jurisdiction, any decision from th[e] Court regarding how the statutes might apply to Plaintiff would be advisory," and thus the court lacked subject-matter jurisdiction. (Opinion and Order, R. 28, Page ID ## 876–77.) Under those circumstances, the court concluded its only "function" was to dismiss the case. (*Id.*, Page ID # 877.) In a footnote, the District Court

observed that "[e]ven if this Court were empowered to reach the merits of [Christian Healthcare's] motion for a preliminary injunction, [it] would have failed to make the requisite showing for injunctive relief, for the same reasons stated herein." (*Id.*, Page ID # 877, fn 4) (citing *D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 327 (6th Cir. 2019) (irreparable injury must be both certain and immediate, not speculative or theoretical)). In its opinion denying Christian Healthcare's motion for reconsideration, the District Court observed that it had dismissed the motion for preliminary injunction "as moot." (Opinion and Order, R. 45, Page ID # 1194.)

### A. Christian Healthcare's request that this Court grant an injunction should be rejected and the matter remanded to the District Court for full consideration of the injunction factors.

On appeal, Christian Healthcare argues that it "deserves a preliminary injunction because the basis for the district court's denial of that motion—lack of standing—was incorrect." (App's Brief, ECF No. 18, Page ID # 65.)

The District Court's one-sentence footnote regarding the motion for preliminary injunctive relief is dicta. See, e.g., *Callahan v. Fed.*

*Bureau of Prisons*, 965 F.3d 520, 526 (6th Cir. 2020) (Nelson Moore, J., dissenting) ("Dicta is defined as '[a] judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential.'")  In other words, the sentence is not a decision of the court.

Even if the sentence could be considered a decision, the District Court assessed only one of the four requisite factors.  And contrary to Christian Healthcare's suggestion, the District Court did not address the substantial likelihood of success factor, but rather determined Christian Healthcare had not shown irreparable harm for the same reasons it had not shown a credible threat of enforcement for purposes of standing—no injury was imminent because its fears were speculative. (Opinion and Order, R. 45, Page ID # 877, fn 4)

Nevertheless, Christian Healthcare argues that "[t]his Court may issue [preliminary injunctive] relief in the first instance because 'injustice might otherwise result' from delaying review."  (App's Brief, ECF No. 18, Page ID # 65) (quoting *Hormel v. Helvering*, 312 U.S. 552, 557 (1941)).  In *Hormel*, which did not involve a preliminary injunction, the Supreme Court observed that there "may always be exceptional

cases or particular circumstances which will prompt a reviewing or appellate court, where injustice might otherwise result, to consider questions of law which were neither pressed nor passed upon by the court or administrative agency below." (*Id*. at 557.)

But this case is not so "exceptional" that it would warrant this Court's consideration, in the first instance, of whether to grant or deny a preliminary injunction, which itself is "extraordinary" relief. *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (preliminary injunctive relief "is an extraordinary measure that has been characterized as 'one of the most drastic tools in the arsenal of judicial remedies.' ")

Moreover, in *Hormel* the Supreme Court observed that appellate courts normally do not consider issues not raised below because it is the trial courts that "determine questions of fact," and "[t]his is essential in order that parties may have the opportunity to offer all the evidence they believe relevant to the issues which the trial tribunal is alone competent to decide[.]" *Hormel*, 312 U.S. at 556. "[I]t is equally essential in order that litigants may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence." (*Id*.)

Here, Defendants opposed the motion for a preliminary injunction on all factors, but their argument on the substantial likelihood of success prong was limited to the jurisdictional arguments of standing, ripeness, and the failure to establish the factors for seeking declaratory relief. (Defs' Resp to PI Mot, R. 18, Page ID # 504–27.) So, Defendants have yet to make a merits argument regarding the constitutionality of the ELCRA or the EAA, or proffered any evidence by way of affidavits, testimony, etc., in support of such an argument.

If this Court reverses the District Court's dismissal for lack of standing, the case will be remanded and Christian Healthcare can renew or re-file its motion for a preliminary injunction and Defendants can respond accordingly, including full briefing on the merits, and proffering any necessary evidence. To deprive the State of the opportunity to defend the constitutionality of its anti-discrimination statutes would be unjust.

Further, this Court has previously remanded a case to the district court to consider additional injunction factors in the "first instance." *See Foresight Coal Sales, LLC. v. Chandler,* 60 F.4th 288, 304 (6th Cir. 2023) ("Having concluded that Foresight Coal was not likely to succeed

on the merits, the district court declined to address the rest of the preliminary injunction factors. We remand for the district court to examine the other three factors in the first instance.") *See also Balow v. Michigan State University*, 24 F.4th 1051, 1061–62 (6th Cir. 2022) ("whether a preliminary injunction is appropriate depends on both the district court's finding of the size of the participation gap and its weighing of the preliminary-injunction factors. This issue should be decided in the first instance by the district court, with the benefit of our clarification on how to determine substantial proportionality."); *Kentucky v. U.S. ex rel. Hagel*, 759 F.3d 588, 600 (6th Cir. 2014) (remanding to district court for consideration of injunction factors after this Court reversed court's determination it lacked jurisdiction).

This Court should thus decline Christian Healthcare's invitation to consider granting or denying a preliminary injunction in the first instance.

**B.    If this Court considers Christian Healthcare's request for an injunction on appeal, it should deny injunctive relief where Christian Healthcare cannot satisfy all four factors.**

A preliminary injunction is an extraordinary remedy that should be granted only "upon a clear showing that the plaintiff is entitled to such relief and proof that the circumstances clearly demand it." *S. Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) (citations omitted). Moreover, its purpose is simply to preserve the status quo until a trial on the merits can be held. *Benisek v. Lamone*, 138 S. Ct. 1942, 1945 (2018). The plaintiff bears the burden to justify relief, even in First Amendment cases." *Platt v. Bd. of Comm'rs on Grievs. & Discipline of the Ohio Supreme Court*, 769 F.3d 447, 453 (6th Cir. 2014) (citing *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012).

Courts consider four factors when ruling on a motion seeking a preliminary injunction: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction. *Bailey*

*v. Callaghan*, 715 F.3d 956, 958 (6th Cir. 2013) (quoting *Hunter v. Hamilton Cty. Bd. of Elections*, 635 F.3d 219, 233 (6th Cir. 2011)).

Assuming for the sake of argument, and thus not conceding, that Christian Healthcare can demonstrate a likelihood of success on the merits, the remaining factors weigh in favor of Defendants and against injunctive relief.

> **1.    Christian Healthcare has not demonstrated it will suffer irreparable harm absent issuance of an injunction.**

Should this Court conclude that Christian Healthcare has sufficiently demonstrated a credible threat of harm for purposes of standing, that does not, ipso facto, mean it has established irreparable harm for purposes of injunctive relief.

Even the strongest showing on the other three factors cannot "eliminate the irreparable harm requirement." *D.T. v. Sumner Cnty. Schools,* 942 F.3d 326–27 (citing *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)). The existence of irreparable harm is indispensable: If the plaintiff is not facing imminent and irreparable injury, there is no need to grant relief now as opposed to at the end of the lawsuit. *Id.* at 327.

To demonstrate irreparable harm, the plaintiffs must show "that . . . they will suffer actual and imminent harm rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006).  The harm must also be such that there is no adequate remedy at law.  *See United States v. Miami Univ.*, 294 F.3d 797, 816 (6th Cir. 2002).  The movant must also show that it will suffer the injury before a final judgment.  *See Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held.").

On appeal, Christian Healthcare argues that, absent a preliminary injunction, it will suffer irreparable harm due to an alleged continued violation of its First Amendment rights.  (App's Brief, ECF No. 18, Page ID ## 65–66.)

But for all the reasons stated above in Defendants' standing and ripeness arguments, Christian Healthcare has not, even as of the filing of this brief, shown by record evidence or otherwise, that these Defendants are poised to imminently enforce the ELCRA or the EAA ***against Christian Healthcare***.  That administrative actions may be

pending as to other entities does not establish irreparable harm to Christian Healthcare for purposes of an injunction.

Further, both the ELCRA and the EAA require interpretation with existing constitutional provisions, and none of the Defendants have issued any administrative decisions or interpretations applying the ELCRA's new protections for sexual orientation and gender identity and expression to a religious organization or entity. So, Christian Healthcare's assertion that Defendants will apply these laws in a manner that will deprive it of its constitutional rights ***is entirely speculative.***

Finally, should a complaint be filed or if an investigation is initiated regarding compliance with the ELCRA or the EAA against Christian Healthcare, it can certainly bring a renewed motion for a preliminary injunction. But, as of this time, no such action has occurred, and Christian Healthcare simply is not facing a risk of imminent and irreparable injury. The District Court concluded as much. (Opinion and Order, R. 28, Page ID # 877, fn 4.) For this reason alone, Christian Healthcare's request for an injunction was correctly

denied by the District Court and should be so as well by this Court.

*D.T.,* 942 F.3d at 327.

> ### 2. Issuance of a preliminary injunction would harm the citizens and would be contrary to the public interest.

Factors three and four in the preliminary-injunction analysis—harm to third parties and to the public—coincide in this case. *See Nken v. Holder*, 556 U.S. 418, 435 (2009) (the harm to the opposing party and the public interest "merge when the Government is the opposing party").

The State's interests here are paramount. The Supreme Court has recognized that "[a]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301 (2012) (C.J. Roberts in chambers) (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977)). *See also Priorities USA v. Nessel*, 860 Fed. Appx. 419, 422–23 (6th Cir. 2021) (recognizing "an injury in the infringement of the state's sovereign interest in passing and enforcing its laws.")

This Court has also recognized that "the public interest lies in a correct application" of the law and "upon the will of the people of Michigan being effected in accordance with Michigan law." *Coal. to Def. Affirmative Action v. Granholm*, 473 F.3d 237, 252 (6th Cir. 2006) (quoting *Congregation Lubavitch v. City of Cincinnati*, 923 F.2d 458, 460 (6th Cir. 1991)). "Thus, the public interest necessarily weighs against enjoining a duly enacted statute[.]" *Priorities USA*, 860 Fed. Appx. at 423.

The Commission was created by the Michigan Constitution to investigate civil rights issues. Mich. Const. 1963, Art. 5, § 29. The ELCRA and the EAA were duly enacted by the Michigan Legislature. Defendants should continue to have the opportunity to apply these statutes to pursue discrimination claims—especially in light of the fact that the ELCRA provides it "shall not be construed as preventing the commission from securing civil rights guaranteed by law other than the civil rights set forth in this act." Mich. Comp. Laws § 37.2705(1). "[G]iving effect to the will of the people by enforcing the laws they and their representatives enact serves the public interest." *Thompson v. Dewine*, 959 F.3d 804, 812 (6th Cir. 2020) (cleaned up).

59

For these reasons, the balance of harms and public interest factors weigh in favor of Defendants and thus in favor of denying injunctive relief.

In sum, even if Christian Healthcare can demonstrate a likelihood of success on the merits, where it cannot meet any of the other injunction factors, especially irreparable harm, its request that this Court issue an injunction in the "first instance" should be denied.

## CONCLUSION AND RELIEF REQUESTED

For the reasons set forth above, Defendants respectfully request that this Court affirm the decisions of the District Court and, if necessary, deny Christian Healthcare's request that this Court issue a preliminary injunction on appeal.

Respectfully submitted,

*s/Kimberly K. Pendrick*
Kimberly K. Pendrick (P60348)
Heather S. Meingast (P55439)
Tonya C. Jeter (P55352)
Assistant Attorneys General
Attorneys for Defendants-Appellees
Civil Rights & Elections Division
3030 W. Grand Blvd, 10th Floor
Detroit, Michigan 48202
Dated:  December 8, 2023          313.456.0067

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type Style Requirements

1.     This brief complies with the type-volume limitation of

Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because, excluding

the part of the document exempted by Federal Rule of Appellate

Procedure 32(f), this brief contains no more than 13,000 words.  This

document contains 11,238 words.

2.     This document complies with the typeface requirements of

Federal Rule of Appellate Procedure 32(a)(5) and the type-style

requirements of Federal Rule of Appellate Procedure 32(a)(6) because

this document has been prepared in a proportionally spaced typeface

using Word 2013 in 14-point Century Schoolbook.

*s/Kimberly K. Pendrick*
Kimberly K. Pendrick (P60348)
Heather S. Meingast (P55439)
Tonya C. Jeter (P55352)
Assistant Attorneys General
Attorneys for Defendants-Appellees
Civil Rights & Elections Division
3030 W. Grand Blvd, 10th Floor
Detroit, Michigan 48202
313.456.0067

## CERTIFICATE OF SERVICE

I certify that on December 8, 2023, the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record (designated below).

*s/Kimberly K. Pendrick*
Kimberly K. Pendrick (P60348)
Heather S. Meingast (P55439)
Tonya C. Jeter (P55352)
Assistant Attorneys General
Attorneys for Defendants-Appellees
Civil Rights & Elections Division
3030 W. Grand Blvd, 10th Floor
Detroit, Michigan 48202
313.456.0067

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Defendants-Appellees, per Sixth Circuit Rule 28(a), 28(a)(1)-(2),

30(b), hereby designated the following portions of the record on appeal:

| Description of Entry | Date | Record Entry No. | Page ID No. Range |
|---|---|---|---|
| Verified Complaint | 08/29/2022 | R. 1 | 1-73 |
| Plaintiffs' Motion for Preliminary Injunction | 08/29/2022 | R. 5 | 170-343 |
| Defendants' Response in Opposition to Motion for Preliminary Injunction | 11/18/2022 | R. 18 | 487-537 |
| Brief in Support of Defendants' Motion to Dismiss | 11/18/2022 | R. 20 | 542-593 |
| Opinion and Order | 03/29/2022 | R. 28 | 854-877 |
| Judgment | 03/29/2022 | R. 29 | 878 |
| Plaintiffs' Motion for Reconsideration | 04/04/2023 | R. 30 | 879-1005 |
| Defendants' Brief in Opposition to Plaintiffs' Motion for Reconsideration | 04/26/2023 | R. 33 | 1010-1035 |
| Plaintiffs' Motion for Leave to File Supplemental Brief | 05/08/2023 | R. 35 | 1039-1059 |
| Defendants' Response in Opposition to Plaintiffs' | 05/22/2023 | R. 37 | 1064-1084 |

| Motion to File Supplemental Brief | | | |
|---|---|---|---|
| Defendants' Response to Plaintiffs' Supplemental Authority | 08/03/2023 | R. 44 | 1189-1192 |
| Opinion and Order Denying Reconsideration | 08/22/2023 | R. 45 | 1193-1205 |
| Plaintiffs' Notice of Appeal | 08/22/2023 | R. 46 | 1206-1208 |