No. 23-1769

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

CHRISTIAN HEALTHCARE CENTERS, INC.,

*Plaintiff-Appellant,*

v.

DANA NESSEL; JOHN E. JOHNSON, JR.; PORTIA L. ROBERSON; ZENNA FARAJ ELHASON; GLORIA E. LARA; REGINA GASCO-BENTLEY; ANUPAMA KOSARAJU; RICHARD CORRIVEAU; DAVID WORTHAMS, in their official capacities as members of the Michigan Civil Rights Commission,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Western District of Michigan
Case No. 1:22-cv-00787

## REPLY BRIEF OF APPELLANT
## CHRISTIAN HEALTHCARE CENTERS, INC.

John J. Bursch
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(616) 450-4235
jbursch@ADFlegal.org

Jonathan A. Scruggs
Bryan D. Neihart
Henry W. Frampton, IV
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
jscruggs@ADFlegal.org
bneihart@ADFlegal.org
hframpton@ADFlegal.org

*Counsel for Appellant*

# TABLE OF CONTENTS

Table of Authorities.................................................................................... iii

Summary of the Reply............................................................................... 1

Argument.................................................................................................... 3

I.   Michigan's brief bolsters the conclusion that Christian
     Healthcare faces a credible threat of enforcement.......................... 3

     A.   Michigan admits that its laws arguably apply to
          Christian Healthcare and never disputes the ministry's
          understanding of how they apply. ......................................... 4

     B.   Michigan does not overcome the presumption that
          attaches to Michigan enforcing its laws. ............................... 7

     C.   Michigan misconstrues the *McKay* factors, but
          Christian Healthcare meets them anyway............................. 12

II.  Christian Healthcare's claims are ripe for review, and it will
     suffer an ongoing hardship absent review now............................ 18

III. Michigan's unlikely exemptions cannot defeat standing and
     ripeness under well-established precedent. ................................. 21

     A.   Fleeting references to other "laws" do not alleviate
          Christian Healthcare's credible threat................................. 21

     B.   Michigan barely mentions the BFOQ, but that doesn't
          defeat standing or ripeness either. ...................................... 24

IV.  Christian Healthcare deserves a preliminary injunction
     because Michigan does not dispute the ministry's likely
     success and the ministry meets the other injunction factors........ 28

Conclusion ............................................................................................. 30

Certificate of Compliance ..................................................................... 31

Certificate of Service ................................................................ 32

# TABLE OF AUTHORITIES

## Cases

*281 Care Committee v. Arneson,*
   638 F.3d 621 (8th Cir. 2011) .......................................................... 6

*303 Creative LLC v. Elenis,*
   600 U.S. 570 (2023) ..................................................... 11, 17, 20, 21

*Assemany v. Archdiocese of Detroit,*
   434 N.W.2d 233 (Mich. Ct. App. 1988) ......................................... 25

*Babbitt v. United Farm Workers National Union,*
   442 U.S. 289 (1979) ................................................. 8, 11, 14, 15, 25

*Bays v. City of Fairborn,*
   668 F.3d 814 (6th Cir. 2012) ......................................................... 29

*Benalcazar v. Genoa Township,*
   1 F.4th 421 (6th Cir. 2021) ........................................................... 22

*Block v. Canepa,*
   74 F.4th 400 (6th Cir. 2023) ................................................... 12, 13

*Braidwood Management, Inc. v. EEOC,*
   70 F.4th 914 (5th Cir. 2023) ................................................... 11, 17

*Brown v. Kemp,*
   86 F.4th 745 (7th Cir. 2023) ......................................................... 24

*Bryant v. Woodall,*
   1 F.4th 280 (4th Cir. 2021) ........................................................... 17

*CHKRS, LLC v. City of Dublin,*
   984 F.3d 483 (6th Cir. 2021) ......................................................... 23

*City of Boerne v. Flores,*
   521 U.S. 507 (1997) ....................................................................... 27

*Doe v. Sundquist,*
   106 F.3d 702 (6th Cir. 1997) ......................................................... 29

*Dombrowski v. Pfister,*
    380 U.S. 479 (1965) ........................................................24

*Employment Division, Department of Human Resources of Oregon v. Smith,*
    494 U.S. 872 (1990) ........................................................26

*FEC v. Cruz,*
    596 U.S. 289 (2022) ...............................................20, 25

*Fischer v. Thomas,*
    52 F.4th 303 (6th Cir. 2022)........................................28

*Green Party of Tennessee v. Hargett,*
    791 F.3d 684 (6th Cir. 2015) ..............................9, 15, 23

*Harris v. Klare,*
    902 F.3d 630 (6th Cir. 2018) ......................................28

*Holder v. Humanitarian Law Project,*
    561 U.S. 1 (2010) ..........................................................11

*Hosanna-Tabor Evangelical Lutheran Church & School v. EEOC,*
    565 U.S. 171 (2012) ......................................................26

*Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston,*
    515 U.S. 557 (1995) ......................................................29

*In re Allied Supermarkets, Inc.,*
    951 F.2d 718 (6th Cir. 1991) ......................................28

*Initiative & Referendum Institute v. Walker,*
    450 F.3d 1082 (10th Cir. 2006) ..................................24

*Isaacson v. Mayes,*
    84 F.4th 1089 (9th Cir. 2023)......................................14

*Kenny v. Wilson,*
    885 F.3d 280 (4th Cir. 2018) ........................................7

*Kentucky v. Yellen,*
    54 F.4th 325 (6th Cir. 2022)..........................................6

*Kiser v. Reitz,*
  765 F.3d 601 (6th Cir. 2014) .......................................... 3

*McKay v. Federspiel,*
  823 F.3d 862 (6th Cir. 2016) .......................................... 4

*McLeod v. Providence Christian School,*
  408 N.W. 2d 146 (Mich. Ct. App. 1987) ........................ 27

*MedImmune, Inc. v. Genentech, Inc.,*
  549 U.S. 118 (2007) .......................................................... 8

*Moon v. Michigan Reproductive & IVF Center, P.C.,*
  810 N.W.2d 919 (Mich. Ct. App. 2011) ......................... 14

*National Federation of Independent Business v. Sebelius,*
  567 U.S. 519 (2012) .......................................................... 8

*National Rifle Association of America v. Magaw,*
  132 F.3d 272 (6th Cir. 1997) .......................................... 7

*Online Merchants Guild v. Cameron,*
  995 F.3d 540 (6th Cir. 2021) .......................................... 18

*Our Lady of Guadalupe School v. Morrissey-Berru,*
  140 S. Ct. 2049 (2020) .................................................... 26

*Peoples Rights Organization, Inc. v. City of Columbus,*
  152 F.3d 522 (6th Cir. 1998) .................................... 17, 23

*Picard v. Magliano,*
  42 F.4th 89 (2d Cir. 2022) .............................................. 6

*Pinney Dock & Transportation Company v. Penn Central
    Corporation,*
  838 F.2d 1445 (6th Cir. 1988) ........................................ 28

*Platt v. Board of Commissioners on Grievances & Discipline of Ohio
    Supreme Court,*
  769 F.3d 447 (6th Cir. 2014) .................................... 6, 17

*Porth v. Roman Catholic Diocese of Kalamazoo,*
532 N.W.2d 195 (Mich. Ct. App. 1995) ......................................... 27

*Regional Rail Reorganization Act Cases,*
419 U.S. 102 (1974) ...................................................................... 19

*Speech First, Inc. v. Schlissel,*
939 F.3d 756 (6th Cir. 2019) .................................................. 13, 16

*Steffel v. Thompson,*
415 U.S. 452 (1974) ............................................................ 8, 23, 27

*Stilwell v. Office of Thrift Supervision,*
569 F.3d 514 (D.C. Cir. 2009) ...................................................... 16

*Susan B. Anthony List v. Driehaus,*
573 U.S. 149 (2014) ............................................................ 3, 18, 21

*Telescope Media Group v. Lucero,*
936 F.3d 740 (8th Cir. 2019) .................................................. 11, 17

*Terrace v. Thompson,*
263 U.S. 197 (1923) ........................................................................ 8

*Thomas More Law Center v. Obama,*
651 F.3d 529 (6th Cir. 2011) .......................................................... 8

*United States v. Stevens,*
559 U.S. 460 (2010) ........................................................................ 1

*Universal Life Church Monastery Storehouse v. Nabors,*
35 F.4th 1021 (6th Cir. 2022) .................................................... 9, 14

*Vidrich v. Vic Tanny International, Inc.,*
301 N.W.2d 482 (Mich. Ct. App. 1980) .......................................... 4

*Virginia v. American Booksellers Association, Inc.,*
484 U.S. 383 (1988) ........................................................................ 8

*Vitagliano v. County of Westchester,*
71 F.4th 130 (2d Cir. 2023) ............................................................ 7

*Weishuhn v. Catholic Diocese of Lansing,*
    756 N.W.2d 483 (Mich. Ct. App. 2008) .........................................25

## **Statutes**

MCL 37.2302 ......................................................................... 10

MCL 750.147 ...................................................................5, 10

## **Regulations**

3 Colo. Code Regs. 708-1:10.14(C)............................................ 12

# SUMMARY OF THE REPLY

Government officials are not infallible. Even well-meaning officials make mistakes. Some misinterpret the law. Others may do so intentionally. That's why courts do "not uphold an unconstitutional statute merely because the Government promise[s] to use it responsibily"—especially when First Amendment freedoms hang in the balance. *United States v. Stevens*, 559 U.S. 460, 480 (2010).

But Michigan asks this Court to flip this presumption—to dismiss Christian Healthcare Center's pre-enforcement challenge to laws that threaten its free speech and religious freedoms simply because the State promises to *consider* the Constitution post-enforcement. In Michigan's words, the ministry cannot show standing or ripeness because the Elliot-Larsen Civil Rights Act (ELCRA) and the Equal Accommodations Act (public-accommodations law) "do not proscribe activity otherwise protected by the First Amendment." Resp. Br. 20, ECF No. 44. Of course, Michigan never says the ministry's activities actually qualify for this protection. The State wants to keep its enforcement options open. So it refuses to disavow here while it aggressively enforces its laws—and proclaims the need to do so—against religious actors elsewhere.

If this were enough to defeat standing and ripeness, pre-enforcement litigation wouldn't do much. After all, *no* law may proscribe activity the First Amendment protects. The question is *whether*

1

that protection safeguards the ministry's freedom to use pronouns, decline cross-sex hormones, publish certain statements, and make employment choices consistent with its faith. That's a *merits* question, not a *standing* or *ripeness* one.

Christian Healthcare has every reason to fear enforcement. Michigan admits its laws are "broad," concedes they apply to Christian Healthcare, describes its enforcement interests as "paramount," and says it deserves an "opportunity to defend the constitutionality of" its laws on remand. Resp. Br. 20–21, 33, 52, 58. Michigan never disagrees with the ministry's interpretation of these laws, how these laws apply to the ministry's activities, or how similar laws are applied across the country. Courts have found credible threats based on much less.

Other facts bolster the point. Michigan aggressively enforces its laws. The State is prosecuting two faith-owned businesses and Catholic Charities, and it has received a complaint against a Catholic medical group. In addition, anyone can file a complaint against Christian Healthcare just for posting its desired statements or policies. Meanwhile, the ministry is justifiably chilling its activities to limit exposure.

In sum, Christian Healthcare (I) has standing and (II) presents ripe claims. (III) Michigan's reliance on vague, someday exemptions do not prove otherwise. And (IV) Christian Healthcare deserves a preliminary injunction. This Court should reverse the district court and order it to grant the ministry's requested injunction.

# ARGUMENT

## I.  Michigan's brief bolsters the conclusion that Christian Healthcare faces a credible threat of enforcement.

Christian Healthcare has standing to sue because the ministry's injury-in-fact is caused by Michigan's laws and is redressed by a favorable decision. *Susan B. Anthony List v. Driehaus* (*SBA List*), 573 U.S. 149, 157 (2014). Michigan mainly disputes injury-in-fact, but it also suggests sometimes that Attorney General Nessel does not enforce ELCRA. Resp. Br. 26, 32. That's not accurate. She enforces the law by statute and in practice. *E.g.*, MCL 37.2602(b); *Rouch World* Br., R.22–4, PageID#675–84 (defending ELCRA). For that reason, the ministry's ELCRA injuries are caused by and redressable against her. *See Kiser v. Reitz*, 765 F.3d 601, 610 (6th Cir. 2014) (injury was caused by and redressable against enforcement officials).

Moving to Michigan's main argument, Christian Healthcare meets *SBA List*'s three-part test for injury-in-fact. 573 U.S. at 159. Michigan concedes that the ministry engages in activities arguably affected with a constitutional interest. Resp. Br. 19. Michigan also confirms that (A) its laws arguably cover the ministry's activities and (B) the ministry faces a credible threat of harm. And (C) Michigan's invocation of *McKay*

*v. Federspiel*, 823 F.3d 862 (6th Cir. 2016), doesn't defeat Christian Healthcare's standing because the ministry meets those factors too.[1]

### A. Michigan admits that its laws arguably apply to Christian Healthcare and never disputes the ministry's understanding of how they apply.

Michigan's response confirms that its laws arguably prohibit Christian Healthcare's activities.

Michigan admits that Christian Healthcare qualifies as an employer and public accommodation under the ELCRA. Resp. Br. 20. Michigan then says it's "unclear" whether the ministry counts as a public accommodation under the public-accommodations law. *Id.* at 21. But that's another way to admit that Christian Healthcare is arguably a public accommodation under that law. After all, the law applies to "*all* other places of public accommodation." MCL 750.146 (emphasis added). Michigan courts labeled this wording "comprehensive" and have applied it to a health club. *Vidrich v. Vic Tanny Int'l, Inc.*, 301 N.W.2d 482, 484 (Mich. Ct. App. 1980). These concessions and caselaw show that the laws at least *arguably* cover Christian Healthcare.

---

[1] In evaluating jurisdiction, Michigan agrees this Court must accept the complaint's allegations as true. Resp. Br. 14. This Court may also consider the ministry's extra-complaint evidence and judicially noticeable materials because Michigan raised a factual attack on jurisdiction by relying on affidavits and unsupported evidentiary statements about enforcement history. Opening Br. 19–20, 22; Resp. Br. 28–30, 37.

But how do they apply? Exactly as Christian Healthcare has described. They require Christian Healthcare to use patients' chosen pronouns regardless of whether the pronouns align with their sex and to offer cross-sex hormones. Opening Br. 25–30, ECF No. 18. The laws also prevent the ministry from making employment decisions consistent with its beliefs and from explaining its pronoun, cross-sex hormone, and employment policies publicly. *Id.* This interpretation derives from the laws' text, caselaw, and Michigan's legal positions. *Id.*; Compl., R.1, PageID#29–41. Other jurisdictions interpret similar laws in similar ways. *Id.* at PageID#35–37.

Michigan notes this interpretation but never renounces it. Resp. Br. 11, 19. That underscores how the ministry's desired activities are arguably proscribed by statute. If the ministry's understanding were wrong, Michigan would correct it. It hasn't.

At most, Michigan muses that it is "unclear" if the public-accommodation law's Publication Ban (MCL 750.147) covers statements about sexual orientation and gender identity. *Id.* at 21 n.6. But Christian Healthcare challenged that clause's application to "sex" and other categories. Compl., R.1, PageID#38–40. And Attorney General Nessel—who enforces the law—has broadly explained that sexual-orientation and gender-identity discrimination *is* sex discrimination. Compl., R.1, PageID#27; Br. on Appeal of Appellants at 10–16, 24–25, *Rouch World, LLC v. Mich. Dep't of C.R.*, 987 N.W.2d 501 (Mich. 2022)

(No. 162482), https://perma.cc/EH2F-BNKB. She never says that she interprets "sex" in MCL 750.147 differently.

Throughout, Michigan assumes that Christian Healthcare must show that its activities are *actually* proscribed by the laws, not just *arguably* proscribed. This mistake explains why Michigan cites possible exemptions that *might* apply to Christian Healthcare, then demands identical precedent prohibiting the ministry's exact activities, Resp. Br. 20–22, 46–47, as though this were a qualified-immunity inquiry. But that asks for too much.

Christian Healthcare need not prove its "intended conduct is *in fact* proscribed." *Picard v. Magliano*, 42 F.4th 89, 98 (2d Cir. 2022). The ministry must simply show that its activities "implicate[], if not violate[], each provision of the law at issue." *Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Sup. Ct.*, 769 F.3d 447, 451 (6th Cir. 2014) (cleaned up). The ministry meets that implication by offering an obviously "*plausible* interpretation of the statute." *Kentucky v. Yellen*, 54 F.4th 325, 337 (6th Cir. 2022); *accord 281 Care Comm. v. Arneson*, 638 F.3d 621, 628 (8th Cir. 2011) (standing where law "could reasonably be interpreted as" prohibiting plaintiffs' activities); Opening Br. 25–30.

In the end, Michigan—like the district court—conflates standing ("arguably" proscribed) with the merits ("actually" proscribed). That is inappropriate. *Supra* § III. Applying the correct standard, Christian Healthcare easily clears *SBA List*'s standard.

**B.    Michigan does not overcome the presumption that attaches to Michigan enforcing its laws.**

The Supreme Court, this Court, and other courts presume a credible enforcement threat when (a) a party alleges an intent to engage in conduct *arguably* proscribed by law and (b) the government refuses to disavow enforcement. Opening Br. 31–35.[2] This presumption applies even more forcefully to new or actively enforced laws. *Id.* For "it is inconceivable that the government would enact a widely publicized law" and then "sit idly by" as it is violated. *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 289 (6th Cir. 1997). Far from rebutting this presumption, Michigan confirms it: Michigan never disavows, admits it recently amended ELCRA, and proclaims a "paramount" interest in enforcing its laws. Resp. Br. 5–9, 58.

Michigan never addresses this presumption, never distinguishes most of the ministry's cited cases, and never justifies why this Court should contradict its own precedent and create a circuit split by disregarding this presumption. *See* EPPC *Amici* Br. 38–40, ECF No. 34 (noting circuit split if district court affirmed). Instead, Michigan offers two reasons to deny standing. Neither work.

---

[2] *See Vitagliano v. Cnty. of Westchester*, 71 F.4th 130, 138 (2d Cir. 2023) (presuming credible threat "in the absence of a disavowal by the government"); *Kenny v. Wilson*, 885 F.3d 280, 288 (4th Cir. 2018) (acknowledging enforcement "presumption" when a law regulates "the class to which the plaintiff belongs" (cleaned up)).

Michigan first emphasizes that Christian Healthcare "has not been the subject of any past or pending action" enforcing these brand new laws. Resp. Br. 3; *id.* at 25, 28, 30, 42–43. But this argument conflicts with century-old Supreme Court cases. *See Terrace v. Thompson*, 263 U.S. 197, 216 (1923) (noting that plaintiffs were not "obliged to take the risk of prosecution" before suing); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128 (2007) (same). Christian Healthcare need not "first expose [itself] to actual arrest or prosecution … to challenge a statute" that deters its "constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). Following Michigan's "be prosecuted now and ask questions later" approach would erode the purpose of pre-enforcement actions.

This point also explains why parties can challenge laws before they are enforced against *anyone*. *See Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979) (standing to challenge provision that had "not yet been applied"); Opening Br. 33–35. In fact, standing may exist *years* before a challenged law takes effect. *See Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392 (1988) (standing "before the statute became effective"); *Thomas More L. Ctr. v. Obama*, 651 F.3d 529, 537 (6th Cir. 2011) (collecting suits filed three to thirteen years before law's effective date), *abrogated on other grounds by Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012). Michigan's demand that

the ministry first receive a complaint or some other enforcement notice cannot be squared with these decisions.

Michigan's second argument fares no better. Michigan rejects any enforcement presumption because Christian Healthcare's cited cases involved "statutes that proscribe[d] very specific conduct" (Resp. Br. 34), attempting to distinguish *Green Party of Tennessee v. Hargett* and *Universal Life Church Monastery Storehouse v. Nabors* on this basis.

But neither case relied on a statute's specificity to prove a credible threat. *Hargett* found standing because the government did not "explicitly disavow[] enforcing" the law. 791 F.3d 684, 696 (6th Cir. 2015). And *Nabors* found standing because the legislature had recently amended the law, and the defendants never gave "clear assurances that they will *not* prosecute … ministers." 35 F.4th 1021, 1035 (6th Cir. 2022). That's the entire affirmative credible-threat analysis from those cases (though these decisions spent time rejecting other arguments like Michigan's).

Michigan presses its second argument further. It says the enforcement presumption doesn't apply here because although its laws "broadly prohibit discrimination," they impose no "explicit ban on" activities like Christian Healthcare's. Resp. Br. 35. That just repackages Michigan's argument that its laws do not *arguably* proscribe Christian Healthcare's activities. The ministry need not show an "explicit ban." *Supra* § I.A. And Michigan's concession about the laws' breadth prove they *arguably* proscribe Christian Healthcare's activities.

A broad law covers more conduct than a narrow one. So standing is easier against the broader law, not vice-versa.

Even in the credible-threat context, Michigan's argument falls flat. Start with Christian Healthcare's facial challenge. That challenge alleges that the Publication Clause's ban on statements that might make someone feel "objectionable, unwelcome, unacceptable, or undesirable" is vague, overbroad, and gives enforcement authorities unbridled discretion. MCL 37.2302(b); MCL 750.147; Compl., R.1, PageID#39, 68. The crux of such facial challenges is that the law *lacks* clarity about when it applies or that the law applies *too* broadly. Michigan's "explicit ban" argument would therefore preclude pre-enforcement suits to facially unconstitutional laws.

Michigan's argument also fails as to Christian Healthcare's as-applied challenges to the Accommodation, Employment, and Publication Clauses. Michigan admits that the ministry is an employer and public accommodation. Resp. Br. 20–21. So the Clauses—which cover employers and public accommodations—apply here. And based on the laws' plain text, caselaw, Michigan's prior briefing, and enforcement history, the Clauses (at least arguably) prohibit Christian Healthcare's desired activities. *Supra* § I.A; Opening Br. 14–17, 25–30; Hoff Decl. in Supp. of Mot. to Suppl. (Hoff Decl.) Ex. 2, ECF No. 19–2 (copy of complaint filed against another religious healthcare provider).

Michigan's "explicit ban" argument suffers from a final defect. It contradicts caselaw. In *Holder v. Humanitarian Law Project*, the Supreme Court held that the plaintiffs had standing to challenge the law as applied to "certain specified activities" related to their speech even though the law broadly prohibited "training," "expert advice or assistance," "services," and "personnel." 561 U.S. 1, 14–15 (2010). Likewise, the plaintiffs in *Babbitt v. United Farm Workers National Union* had standing to challenge broad "unfair labor" laws as applied to their speech that prohibited "dishonest, untruthful and deceptive publicity." 442 U.S. at 301. They had standing even though they did "not plan to propagate untruths" and the law had never been applied before. *Id.* at 301–02.

Following these cases, many courts have held that plaintiffs like Christian Healthcare have pre-enforcement standing to challenge general anti-discrimination laws that do not mention specific activities in their text. *See Telescope Media Grp. v. Lucero* (*TMG*), 936 F.3d 740, 749–50 (8th Cir. 2019) (public-accommodations law); *Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914, 924–30 (5th Cir. 2023) (employment law). For example, in *303 Creative LLC v. Elenis*, the Supreme Court held that a website designer had standing to challenge a public-accommodations law, 600 U.S. 570, 580–83 (2023)—even though Colorado's regulations (like Michigan's) required enforcement officials to "follow the interpretations and guidance established in State and

Federal law, regulations, and guidelines," 3 Colo. Code Regs. 708-1:10.14(C). Rather than rejecting these decisions, this Court should follow them and hold that Christian Healthcare has standing.

### C. Michigan misconstrues the *McKay* factors, but Christian Healthcare meets them anyway.

Like the district court, Michigan exaggerates the *McKay* factors. But Christian Healthcare meets those too because Michigan actively enforces its law, fails to disavow, and makes enforcement easy.

**Active enforcement.** Michigan never denies that it actively enforces the ELCRA. Opening Br. 35–36. The State just says this factor requires the ministry to identify "a similarly situated religious entity." Resp. Br. 28. This Court recently rejected that argument.

In *Block v. Canepa*, a wine merchant challenged a state law that limited transportation of liquor, beer, *and* wine. 74 F.4th 400, 405 (6th Cir. 2023). To prove a credible threat, the wine merchant pointed to prior prosecutions for liquor and beer transportation. *Id.* at 410. The district court disregarded these prosecutions. *Id.* at 407. The district court said the merchant "fail[ed] to establish a history of enforcing" the law "against individuals engaging in [his] desired conduct, *i.e.*, transporting *wine* for personal use." *Id.* This Court called that analysis "flawed." *Id.* at 410. The merchant was not "obligated to show" that the state "prosecuted people for transporting wine, rather than liquor." *Id.*

Trying to distinguish *Block*, Michigan misreads it. Michigan says the merchant in *Block* identified an enforcement history against "the same, specific conduct." Resp. Br. 30. But the district court found the conduct was *not* the same—transporting wine was different from transporting beer or liquor. And this Court said that difference was irrelevant. The merchant—like Christian Healthcare—only needed to show that the state *generally* "prosecutes violations of … the statute at issue." *Block*, 74 F.4th at 410.[3]

*Speech First, Inc. v. Schlissel* is cut from the same cloth. Michigan is right that "bullying and harassment[] *were* the explicit conduct the university policy prohibited." Resp. Br. 31. And that proves the point. The student group in *Speech First, Inc.* desired to engage in "protected speech"—i.e., speech that *was not* bullying or harassment. 939 F.3d 756, 766 (6th Cir. 2019). But the prior disciplinary actions "involving 'bullying' or 'harassing' misconduct" were still relevant to the university's active enforcement even though those actions involved dissimilar conduct from a merits perspective. *Id.*

Plus, Christian Healthcare could hardly be faulted for not identifying a prosecuted twin because Michigan only recently amended

---

[3] Michigan says *Block* is different because that law did not require "consideration of other laws." Resp. Br. 31. But it did: the Supremacy Clause. U.S. Const. art. VI, para. 2. In his suit, the merchant contended that the law violated the Commerce Clause. *Block*, 74 F.4th at 406.

the ELCRA. Resp. Br. 7–9, 28. Michigan acknowledges it would not be "surprising[ ]" if the ministry could not locate an exact comparator. *Id.* at 29. That sentiment echoes *Nabors*. As this Court said there, it was "unsurprising" that "no one ha[d] been prosecuted under the amendment" because it was enjoined soon after taking effect. 35 F.4th at 1035. Other courts also downplay this factor, concluding there is "little need" to show an enforcement history for "recently enacted" laws. *Isaacson v. Mayes*, 84 F.4th 1089, 1099 (9th Cir. 2023). On top of that, an enforcement history isn't required. *E.g.*, *Babbitt*, 442 U.S. at 302.

Even so, Christian Healthcare has identified comparators. In *Rouch World*, Michigan is prosecuting two faith-based businesses for declining to provide services that violated their religious beliefs. Opening Br. 14–16. Michigan argued that the Free Exercise Clause did not protect the owners' religious beliefs because the ELCRA regulates public accommodations in a "neutral and generally applicable" way. *Rouch World* Br., R.22–4, PageID#696.

Michigan is also investigating Catholic Charities for alleged gender-identity discrimination. Pl.'s Suppl. Br. & Ex. A, R.35–1-35–2, PageID#1044–1059. Private parties have launched complaints against medical providers, including a Catholic health clinic. *Moon v. Mich. Reprod. & IVF Ctr., P.C.*, 810 N.W.2d 919, 921 (Mich. Ct. App. 2011); Hoff Decl. Ex. 2. Michigan always denies BFOQs for non-ministerial employees at religious organizations. Opening Br. 37. And Michigan

roams the country filing amicus briefs that oppose First Amendment freedoms like those Christian Healthcare asserts. *Id.* at 16.

That history satisfies this factor as to the ELCRA. Yet Michigan claims there is no evidence of Attorney General Nessel enforcing the public-accommodations law. That history is unnecessary where Michigan refuses to disavow, the text of the law applies to Christian Healthcare, and Attorney General Nessel has actively enforced similar laws. *See Babbitt*, 442 U.S. at 302 (standing even though provision "may never be applied"); Opening Br. 34 (collecting cases).

**No disavowal.** Instead of disavowing, Michigan doubles-down on its enforcement authority. Michigan admits that Christian Healthcare is an employer and a public accommodation. Resp. Br. 20–21. Michigan says there is "no authority" for a religious entity like Christian Health-care to be "immun[e] from suit, an investigation, etc, as religious free-doms must be weighed against governmental interests based on the particular facts of each case." *Id.* at 24. Michigan then asks for an "opportunity to defend the constitutionality" of the laws on remand. *Id.* at 52. And Michigan likewise proclaims a "paramount" interest in applying its law "here." *Id.* at 58.

That's nowhere near what this Court requires to sufficiently disavow—i.e., "*explicitly* disavow[ing] enforc[ement]" of the law "in the future." *Hargett*, 791 F.3d at 696 (emphasis added). Quite the opposite. This ongoing defense reveals a credible threat. *See Speech First, Inc.*,

939 F.3d at 770 (consistent defense of a policy suggested future threat); *Stilwell v. Office of Thrift Supervision*, 569 F.3d 514, 518 (D.C. Cir. 2009) (Kavanaugh, J.) (noting it was "ironic" for the government to argue a plaintiff "lack[s] standing" and then say it must apply the law to him). The logic is simple; if a government maintains an interest in enforcing a law, it will actively defend it.

Trying a work-around, Michigan claims it cannot disavow "broad antidiscrimination" laws. Resp. Br. 33. But the ministry's as-applied challenges don't require a broad disavowal. Christian Healthcare provided the exact statements it wishes to publish and described its desired activities in minute detail. *See infra* § II. Michigan *can* disavow—it just chooses not to do so.

Michigan's theory perversely incentivizes governments to pass broad laws to avoid pre-enforcement suits. Return to the blogger example. Opening Br. 37. Michigan could pass a law banning all blogs criticizing certain ideas in the name of preventing discrimination. Michigan could label it a "broad antidiscrimination" law. Under Michigan's theory, no one could challenge that law until it prosecuted an identical person. That renders First Amendment freedoms a dead letter.

That's why courts don't adopt that theory. Courts routinely allow parties to challenge general anti-discrimination laws as applied to them when the law arguably covers them and the government refuses to

disavow. *See 303 Creative LLC*, 600 U.S. at 580–83; *TMG*, 936 F.3d at 749–50; *Braidwood Mgmt.*, 70 F.4th at 924–30.

On-the-ground activity shows why Michigan refuses to disavow here: it wants to aggressively *enforce* its laws. Even since this appeal, Michigan received complaints against a religious medical provider and a hair salon. Appellant's Mot. to Suppl. Record 2–5, ECF No. 19–1. In a particularly aggressive move, Michigan is prosecuting Studio 8—and asking for significant monetary penalties—based only on public comments. Gajdzis Decl. in Supp. of Second Mot. to Suppl. (Gajdzis Decl.) Exs. A–C, ECF No. 43–2.

Michigan contests this evidence, saying that standing must be evaluated "at the time" the complaint was filed. Resp. Br. 28 n.9. But this evidence tracks allegations in the complaint. Compl., R.1, PageID#29–44. And this Court looks to post-complaint conduct to evaluate disavowals. *See Platt*, 769 F.3d at 452 (holding that the State "refused to disavow" at appellate "oral argument"); *Peoples Rts. Org., Inc. v. City of Columbus*, 152 F.3d 522, 529 (6th Cir. 1998) (holding a city refused to disavow in "its answer" to the complaint). Michigan's ongoing enforcement elsewhere—combined with its steady refusal to disown enforcement here—shows it has no desire to disavow. *See Bryant v. Woodall*, 1 F.4th 280, 288 (4th Cir. 2021) (standing where state's "continued interest in regulating" activity "remain[ed] vividly apparent"). That gives Christian Healthcare standing.

**Statutory attributes that facilitate complaints.** Michigan's laws are also easy to enforce. Michigan conceded this point below. Defs.' Reply in Supp. Mot. Dismiss, R.23, PageID#759. But the State retreats from it now, saying this factor cuts against Christian Healthcare because the laws are interpreted "in accordance with other applicable laws." Resp. Br. 32–33. But eventual outcomes are irrelevant to initial filings. This Court held as much in *Online Merchants Guild v. Cameron*. There, an association challenged a law that allowed "private plaintiffs" to file complaints. 995 F.3d 540, 551 (6th Cir. 2021). The law also had a "safe harbor[ ]" provision that could "preclude liability if an enforcement action materializes." *Id.* Even so, that provision did not diminish the threat of private enforcement. *Id.* The provision did "not preclude enforcement actions and the associated costs" even "where the Attorney General's investigative actions are inconclusive." *Id.* The same is true here. The ministry meets a combination of the *McKay* factors.

## II. Christian Healthcare's claims are ripe for review, and it will suffer an ongoing hardship absent review now.

Christian Healthcare's claims are also ripe. Michigan notes the overlap between standing and ripeness. *SBA List*, 573 U.S. at 157 n.5; Resp. Br. 39. And Michigan concedes that it disputes ripeness "for the same or similar reasons" it disputes standing. Resp. Br. 39. The ministry refutes most of those arguments elsewhere. *See supra* § I; *infra* § III. But Michigan raises two prudential questions that warrant

unique answers: (1) are the facts concrete enough? and (2) would Christian Healthcare suffer hardship without court review now? Resp. Br. 40. The answer to both is yes.

State with concrete facts. The ministry described its current practices in painstaking detail and provided actual examples of its desired public statements and policies, all of which arguably violate Michigan's laws. Opening Br. 41–42. Michigan never asks for more facts to evaluate these items. Michigan never distinguishes other pre-enforcement Supreme Court cases ruling on precise statements like the ministry's. *Id.* And Michigan prosecutes others on comparably slim evidentiary records.

Take Studio 8. Gajdzis Decl. Exs. A–C. In that prosecution, Michigan relied on mere social-media posts to trigger a discrimination charge. *Id.* Christian Healthcare has provided much more detail here about its practices, policies, and desired statements than a few short social-media posts. If Michigan can issue a discrimination charge based only on the latter, both it and this Court can evaluate whether Michigan's laws threaten the ministry's ability to follow its policies and publish its statements. While the Studio 8 proceedings began after Christian Healthcare filed its complaint, ripeness concerns "the situation now," not just when the complaint was filed. *Reg'l Rail Reorganization Act Cases*, 419 U.S. 102, 140 (1974).

In sum, Chrisitan Healthcare's challenge to the Publication Clause is ripe. That means its challenges to the Employment and Accommodation Clauses are ripe too. Michigan only restricts Christian Healthcare's desired statements and policies under the *Publication Clause* because the *Employment and Accommodation Clauses* arguably proscribe the activities underlying those statements and policies. *See* Pl.'s Br. in Supp. Prelim. Inj. Mot., R.7, PageID#436, 449. In other words, the Publication Clause depends on the other Clauses' definition of illegal activities. That intertwinement gives Christian Healthcare standing to challenge each provision. *See 303 Creative LLC*, 600 U.S. at 581 n.1, 598 n.5 (holding similar provisions worked together); *FEC v. Cruz*, 596 U.S. 289, 298–302 (2022) (holding plaintiff had standing to challenge statute and its implementing regulations because they operated in tandem).

Christian Healthcare also presents independently ripe challenges to the Employment and Accommodation Clauses. Opening Br. 42. But Michigan says a court must "speculate" about whether any of the ministry's members would request pronoun usage or cross-sex hormones. Resp. Br. 45. Not so. The Studio 8 case shows Michigan prosecutes based solely on public comments. Michigan can launch its own complaints. Compl., R.1, PageID#42. Christian Healthcare regularly confronts these issues. *Id.* at PageID#9, 28, 51–54. And a pending request is legally unnecessary. *E.g.*, *303 Creative LLC*, 600

U.S. at 580–83 (affirming designer's standing before she entered wedding website market). Finally, although Michigan never mentions it, Christian Healthcare's facial attack on the Publication Clause's ban on "unwelcome" statements is ripe. Opening Br. 42.

End with hardship. Christian Healthcare checks that box too. Christian Healthcare has reasonably chilled its speech to avoid the credible threat posed by Michigan's laws; and every day the ministry forgoes its freedom to speak and operate consistent with its beliefs. Opening Br. 18–19, 48. The ministry suffers an inherent hardship when Michigan's laws force it to avoid constitutionally protected activities. *See SBA List*, 573 U.S. at 167–68.

## III. Michigan's unlikely exemptions cannot defeat standing and ripeness under well-established precedent.

Throughout its response, Michigan repeatedly chants one common refrain: Christian Healthcare cannot show standing or ripeness because Michigan's laws (A) prohibits discrimination "except where permitted by law" and (B) allows bona-fide-occupational-qualification (BFOQ) exemptions. The district court erred in relying on these justifications.

### A. Fleeting references to other "laws" do not alleviate Christian Healthcare's credible threat.

The Supreme Court in *Holder*, this Court in *Dambrot*, and a collection of decisions from other circuits have found standing for plaintiffs to challenge laws with explicit constitutional or statutory

exemptions. Opening Br. 44–45. Michigan never even mentions these cases, much less distinguishes them. But they all disprove Michigan's argument that its laws pose no threat because they only apply "where permitted by law," subject to "conditions and limitations established by law," and consistent with other "civil rights." Resp. Br. 21–22, 29–31, 33–38, 45, 57.

Making matters worse, Michigan isn't even sure whether "law" in this context includes the Constitution. Michigan notes that "law" "does not appear to have been interpreted," but "it is reasonable to conclude that it … includes constitutional law." *Id.* at 20. But then Michigan claims there "is no authority for the provision that a religious entity's religious rights provide it with immunity from suit." *Id.* at 24. Michigan's hesitancy to confirm the Constitution's application reveals the folly of trusting the State to apply its laws consistent with the ministry's constitutional freedoms.

But whether the First Amendment protects Christian Healthcare's activities—and therefore whether the ministry's activities are "permitted by law"—is a *merits* question, not a *standing* one. A merits victory later doesn't deprive Christian Healthcare of standing now. Michigan's argument conflates these distinct principles. But standing and merits are different things. "Rarely do the twain meet." *Benalcazar v. Genoa Twp.*, 1 F.4th 421, 424 (6th Cir. 2021).

If courts lumped merits and standing together, "every losing claim would be dismissed for want of standing" rather than on the merits. *CHKRS, LLC v. City of Dublin*, 984 F.3d 483, 489 (6th Cir. 2021) (cleaned up). Put differently, the losing party would have no "legally protected interest" in the unsuccessful claim and so could not show an "Article III injury." *Id.* at 488–89 (cleaned up). Under Michigan's logic, every successful pre-enforcement action would end with a dismissal for insufficient standing rather than a favorable merits ruling.

Michigan denies standing because Christian Healthcare *might* be able to prove post-enforcement that the First Amendment protects its decisions on pronouns, cross-sex hormones, and employees. In Michigan's words, Christian Healthcare might show that its activities are "permitted by law." Resp. Br. 33. And if that's true, the argument goes, Christian Healthcare's activities do not violate the law and it faces no threat.

That logic nullifies all pre-enforcement litigation. Minority political parties, anti-war protestors, and countless others would lack standing to challenge unconstitutional restrictions on their speech. *Contra Steffel*, 415 U.S. at 459; *Hargett*, 791 F.3d at 696. Lawful firearm owners would be unable to contest laws illegally regulating gun ownership. *Contra Peoples Rts. Org.*, 152 F.3d at 531–39. And successful efforts by unpopular speakers to strike down facially vague and overbroad laws would be refused on jurisdictional grounds. *Contra*

*Dombrowski v. Pfister*, 380 U.S. 479, 486–89, 493–96 (1965). According to Michigan, these plaintiffs all lacked standing because the First Amendment *might* protect them if government officials later filed suit. "But that would put the merits cart before the standing horse." *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1093 (10th Cir. 2006).

Michigan's laws' passing references to other "law" doesn't change the analysis. The Seventh Circuit put it plainly. "[S]tatutory recognition of a First Amendment defense does not weaken the case for standing" because that defense is always available "whether the statute refers to it or not." *Brown v. Kemp*, 86 F.4th 745, 764 n.6 (7th Cir. 2023); *see* Opening Br. 47 (making same point). Michigan cannot downgrade Christian Healthcare's First Amendment guarantees to a statutory gratuity, then duck out on the check when someone brings a pre-enforcement suit.

### B. Michigan barely mentions the BFOQ, but that doesn't defeat standing or ripeness either.

Christian Healthcare already explained how Michigan's BFOQ process independently violates its rights to free exercise and free speech—it empowers Michigan to declare whether the ministry's employee positions are religious enough and whether the ministry's communications about those positions are orthodox. Opening Br. 48–52; *see* JCRL *Amici* Br. 17–19, ECF No. 37. The ministry also highlighted

how Michigan has consistently rejected BFOQ requests for support staff, clerical positions, and maintenance personnel—positions like Christian Healthcare's medical-services coordinator, receptionists, nurses, custodians, and medical assistants who must abide by the ministry's religious beliefs and mission. Opening Br. 51; Compl., R.1, PageID#24–26.

Michigan never addresses either defect. And Michigan never concedes that Christian Healthcare's employees *deserve* a BFOQ despite sufficient information to do so. Rather, the State repeatedly asks Christian Healthcare to submit to this unconstitutional process. *See* Resp. Br. 21, 35, 44, 48. But "in view of the nature of their claim," Christian Healthcare's avoidance of this process "does not defeat the justiciability of [its] claim." *Babbitt*, 442 U.S. at 299; *see Cruz*, 596 U.S. at 298 (similar). At best, Michigan cites four cases that supposedly applied religious exemptions. Resp. Br. 23. But those cases fall away under even superficial scrutiny.

Two cases applied the ministerial exception using factors that resemble those the Supreme Court has rejected. *Compare Weishuhn v. Cath. Diocese of Lansing*, 756 N.W.2d 483, 500 (Mich. Ct. App. 2008) (listing four factors including involvement with liturgy and "worship") *and Assemany v. Archdiocese of Detroit*, 434 N.W.2d 233, 238 (Mich. Ct. App. 1988) (similar as applied to employee with "pastoral-liturgical leadership role") *with Our Lady of Guadalupe Sch. v. Morrissey-Berru*,

140 S. Ct. 2049, 2066–67 (2020) (refusing to analyze ministerial status "as checklist items to be assessed and weighed against each other in every case"). In short, Michigan's *leading* cases fall short of Supreme Court precedent.

Even so, Michigan relies on *Assemany* to explain its current vision of the Free Exercise Clause. The State says, "religious freedoms must be weighed against governmental interests." Resp. Br. 24. But the Supreme Court has rejected balancing in the church autonomy context. *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 196 (2012) ("[T]he First Amendment has struck the balance for us."). Michigan further explains its view that "'the right of free exercise does not relieve'" Christian Healthcare "'of the obligation to comply with'" neutral and generally applicable laws. Resp. Br. 24 (quoting *Employment Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 879 (1990)). But *Smith* doesn't apply to the church autonomy doctrine. *Hosanna-Tabor*, 565 U.S. at 190.

Michigan maintains a cramped view of the First Amendment— which is why the ministry needs court intervention. What's more, neither case evaluated a medical religious ministry. Neither case protected non-ministerial employees of the kind for which Christian Healthcare seeks protection. So neither case gives Christian Healthcare the protection from Michigan it needs. That alone is decisive. It only gets worse though for Michigan.

Another of Michigan's cases relied on a now-defunct application of the federal Religious Freedom Restoration Act. *Compare Porth v. Roman Cath. Diocese of Kalamazoo*, 532 N.W.2d 195, 198 (Mich. Ct. App. 1995) *with City of Boerne v. Flores*, 521 U.S. 507 (1997) (invalidating RFRA as applied to state law). That's certainly not reassuring. And in the final case, the religious claimant *lost*. *McLeod v. Providence Christian Sch.*, 408 N.W. 2d 146, 150–53 (Mich. Ct. App. 1987).

In the end, Michigan's cases prove the opposite point for which they were cited—Christian Healthcare cannot rely on Michigan, Michigan's faulty imposition of a balancing test to church autonomy, or outdated and factually inapplicable state-court decisions to safeguard its constitutionally protected rights. That just underscores why Michigan is wrong to require the ministry to endure the BFOQ process. There is a reason most other states in the Union offer broad exemptions for religious organizations rather than apply Michigan's position-by-position BFOQ system. Survey, R.5–8, PageID#335–37. Christian Healthcare need not submit to this process before requesting relief in federal court because "Congress has assigned to the federal courts" a "paramount role" to "protect constitutional rights." *Steffel*, 415 U.S. at 472–73. Christian Healthcare needs that protection now so that it can continue to serve its community consistent with its religious beliefs.

**IV. Christian Healthcare deserves a preliminary injunction because Michigan does not dispute the ministry's likely success and the ministry meets the other injunction factors.**

This Court should also issue Christian Healthcare's requested injunctive relief. True, this Court does not "[o]rdinarily" consider an issue not resolved below. *Harris v. Klare*, 902 F.3d 630, 635–36 (6th Cir. 2018). But the "rule is not absolute"; this Court has "discretion" to do so. *Id.* That discretion may be exercised when parties present an issue "'with sufficient clarity and completeness and its resolution will materially advance the progress of … protracted litigation.'" *In re Allied Supermarkets, Inc.*, 951 F.2d 718, 725 (6th Cir. 1991) (quoting *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1461 (6th Cir. 1988)). Those considerations apply here.

Christian Healthcare explained—based on the undisputed record—why it deserves a preliminary injunction. Opening Br. 52–64; Pl.'s Br. in Supp. Prelim. Inj. Mot., R.7, PageID#416–53. Now, Michigan "[a]ssum[es] for the sake of argument" the ministry's likelihood of success on the merits. Resp. Br. 55. And, by "not addressing the merits at all," Michigan "has forfeited any further argument about likelihood of success." *Fischer v. Thomas*, 52 F.4th 303, 310 (6th Cir. 2022).

Evaluating the requested injunction also avoids prolonged litigation. If remanded, and on any subsequent appeal from a preliminary-injunction order, this Court would need to fulfill its

"constitutional duty to conduct an independent examination of the record as a whole, without deference to the trial court" because Christian Healthcare raises First Amendment claims. *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 567 (1995). This Court can conduct that review now. *Cf. Doe v. Sundquist*, 106 F.3d 702, 707 (6th Cir. 1997) (reaching definitive merits on preliminary-injunction appeal "in the interest of judicial economy").

Because Christian Healthcare has shown a credible threat and a likelihood of success on the merits, Michigan's concerns about the other three injunction factors dissolve. Christian Healthcare is chilling its constitutionally protected expression to avoid prosecution. Opening Br. 18–19, 48. That's an irreparable harm. *Bays v. City of Fairborn*, 668 F.3d 814, 825 (6th Cir. 2012). The final factors—third-party harms and the public interest—converge here. The public "always" benefits from injunctions that stop constitutional violations, and the government has no legitimate interest infringing those rights. *Id.* (cleaned up); *see also* JCRL *Amici* Br. 5–29, ECF No. 32–1. The requested injunction doesn't stop Michigan from generally pursuing any legitimate non-discrimination interests. It only prevents Michigan from violating Christian Healthcare's constitutional rights.

## CONCLUSION

This Court should reverse the district court's decision to dismiss Christian Healthcare's case and should order that court to grant Christian Healthcare's requested injunctive relief. That is the only way the ministry can freely speak and serve the medical needs of its community without the threat of government punishment as this case proceeds.

Dated: December 21, 2023

Respectfully submitted,

*s/John J. Bursch*
John J. Bursch
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(616) 450-4235
jbursch@ADFlegal.org

Jonathan A. Scruggs
Bryan D. Neihart
Henry W. Frampton, IV
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
jscruggs@ADFlegal.org
bneihart@ADFlegal.org
hframpton@ADFlegal.org

*Counsel for Appellant*

**FRAP 32(g)**

**CERTIFICATE OF COMPLIANCE**

This brief complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,498 words, excluding parts of the brief exempted by Fed. R. App. P. 32(f) and 6 Cir. R. 32(b).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in Word 365 using a proportionally spaced typeface, 14-point Century Schoolbook.

Dated: December 21, 2023

*s/John J. Bursch*
John J. Bursch

*Attorney for Plaintiffs-Appellees/Cross-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2023, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*s/John J. Bursch*
John J. Bursch

*Attorney for Plaintiffs-Appellees/Cross-Appellants*